Merrimack,
Dec. 6, 1921.

CHARLES G. REMICK, *Trustee*, v. JOSHUA B. MERRILL, 2d., & a.

Former decisions upon the construction of wills are not to be given the force of binding authorities in a given case, unless the language of the will and the circumstances are so far identical as not to admit of a reasonable distinction.

Devise in trust for testator's two sons for their lives and that of the survivor "and at the decease of both, the said remainder . . . shall be paid to my heirs at law." By the words "my heirs" was not intended those who answered that description at the testator's death but his heirs ascertained at the termination of the trust.

Where the members of a class of distributees are all related to the testator in the same degree, the fund is to be distributed between them equally.

PETITION, for instructions by the trustee under the will of Joshua B. Merrill who died July 4, 1894, leaving a will dated August 19, 1891. Two sons, Frank B. and Samuel F., three grandchildren, two (Joshua B. Merrill, 2d. born October 17, 1881 and Ellen Merrill born August 16, 1874 children of a third son Lyman, who died in 1885), and Ogarita daughter of Frank B. born February 6, 1883, were living at the testator's decease. Samuel F. Merrill died without issue November 17, 1902, leaving all his estate to his wife by will. She died December 12, 1910, leaving by will to Frank B. all property coming to her by the will of Samuel F. Frank B. Merrill died July 2, 1920. The three grandchildren survive. The material part of the ninth clause of the will is: "Ninth. As to all the residue and remainder of my estate, real, personal and mixed, wherever found and however situated, I give, devise and bequeath the same unto Charles G. Remick of said Concord, to hold the same in Trust for the following purposes, namely: to invest and to keep the same properly invested and to pay over the income thereof, in equal portions to my sons, Frank B. Merrill and Samuel F. Merrill during their natural

lives, and when either dies, the whole income shall be paid to the sur-
vivor, and at the decease of both, the said remainder, with all ac-
cumulations shall be paid to my heirs at law, free from said trust. . . .

"I have made this disposition of the remainder of my estate from no
lack of affection for my said sons, but moved by an earnest desire to
secure their support and comfort under any and all circumstances
in which they may be placed by sickness or misfortune, to which
all are liable."

The petitioner, Charles G. Remick, was appointed trustee, has
duly performed his trust and now asks advice as to the distribution
between the three grandchildren of the balance remaining in his
hands. Ogarita claims two-thirds of the fund and the said Joshua
and Ellen each one-third.

By the fifth clause of his will the testator left $2000 to trustees
to invest for the benefit of his grandson, Joshua B. Merrill, 2d., the
whole to be paid him when he became twenty-five years of age, and
if he should die before attaining that age, the trustees are directed
to pay the fund "to such persons as shall then be my heirs, according
to the laws of distribution then in force in this state." By the sixth
clause the testator gave $2000 to trustees for the benefit of his grand-
daughters Ellen and Ogarita, one-half to be paid to each upon such
granddaughter's attaining the age of twenty-one. And if either
should die before arriving at that age the portion of such decedent,
the will directs, "shall be paid to such persons as shall be my heirs
according to the laws of distribution then in force in this State."
Transferred by *Marble*, J., without a ruling from the April term, 1921,
of the superior court.

*Elwin L. Page*, for the trustee.

*Reuben E. Walker* and *James W. Remick* (*Mr. Remick* orally), for
Joshua 2d. and Ellen.

*Streeter, Demond, Woodworth & Sulloway* (*Mr. Jonathan Piper*
orally), for Ogarita.

PARSONS, C. J. Did the testator direct that the fund provided
for the benefit of his sons should upon the completion of the trust
be paid to his heirs then living to receive it, or did he instruct the
trustee to pay the same to the heirs, assignees, or legatees of those
persons who were his heirs when he died? The language of the will
is, "and at the decease of both, the said remainder, with all accumu-

lations shall be paid to my heirs at law." At his decease two sons and two grandchildren, children of a deceased son, constituted his heirs at law; at the time of distribution three grandchildren survived. Ogarita, child of the last surviving son, claims two-thirds upon the ground that the share of another son came to her father by will, so that she is entitled to two of the three shares into which the testator's property would have been divided at his decease if he had died intestate, while Joshua B., 2d., and Ellen claim the distribution is to be made as if the testator's death occurred at the time of distribution, in which case the grandchildren would share equally. It is conceded that the question is what did the testator intend by the language used, and that his intention so expressed is to be found as a fact upon competent evidence and not by the application of arbitrary rules.

"This is so firmly established in this jurisdiction that a citation of authorities in its support is superfluous. It follows that former decisions upon the construction of wills are not to be given the force of binding authorities in a given case, unless the language of the will and circumstances are so far identical as not to admit of a reasonable distinction." *Galloway* v. *Babb*, 77 N. H. 259, 260. A question of fact is determined by the view of the tribunal trying the fact of the comparative weight of the evidence presented. It is not unusual for different minds weighing the same evidence to reach widely different and even contradictory conclusions. See *Harris* v. *Ingalls*, 74 N. H. 339, 345; *Grafton County Electric Light &c. Co.* v. *State*, 78 N. H. 330; *Baker* v. *Cummings*, 169 U. S. 189. "The attempt to establish a rule for the decision of questions of fact always results in failure. The different classes of evidence proper for consideration may appear of different weight to different minds. The question is . . . what impression does the evidence make upon the minds of the court." *Grafton County Electric Light &c. Co.* v. *State*, *supra*, *p.* 333. The verdict of a jury is set aside if they are even indirectly informed as to the decisions of other juries in like cases. *Noble* v. *Portsmouth*, 67 N. H. 183. As the decision depends upon the view of the tribunal of the weight of the evidence presented, the decision of other courts or of the same court upon the same state of facts cannot constitute a rule for the decision of the instant case, for facts cannot be found by rule. Whether the finding of the same or another court upon like facts is even competent evidence may not be a doubtful question (*Kendall* v. *Green*, 67 N. H. 557, 561, 562), but it is very improbable that two cases depending upon exactly identical evidence will ever be presented. If the findings of fact of one tribunal are competent

as a guide for the determination of fact by another, it is difficult to see why jurors should not be informed as to the results of the deliberations of other juries. Decisions tending "to show what is the natural and ordinary significance of the language under consideration," *Hall* v. *Blodgett*, 70 N. H. 437, 440, are helpful when the ordinary meaning of words is under consideration and doubtless are of greater authority than the definitions of the dictionaries, especially if it can be assumed the testator or the scrivener had knowledge of such decisions. "Language, independent of the subject-matter or the author's general purpose, is usually meaningless and obscure." *Kendall* v. *Green, supra,* 563. Hence the fact found in one case that when the testator left his estate "to my heirs" he intended by heirs those persons answering that description at his decease (*Simes* v. *Ward*, 78 N. H. 533), is not an authority conclusively establishing that in all subsequent wills these words have that meaning. To so hold would be to reëstablish the discarded doctrine that the intention of the testator is to be determined by arbitrary rules, *i. e.*, former judicial utterance.

In this case when the testator died, the statutory distributees of his estate were his two sons and the children of a third son who died before the making of the will. That the testator did not then desire the division of the remainder of his estate into three parts is clear from the fact that he placed it all in the hands of a trustee to be held until the death of the two sons for whose benefit the trust was created, under which the income was to be paid them, but they were given no power or control over the fund itself. If, after excluding them from all power over the *corpus* of the fund while either lived, the testator had intended to vest in them the power of disposing of the same or a part of it after the death of both, it seems probable that in this carefully written document such power would have been plainly expressed. The testator knew of the existence of the grandchildren. He provided for them in his will. He was not controlled by the statutory principle which divides an estate *per stirpes*, for the provision made for the two children of the deceased son was threefold in amount that made for the single child of another. He knew that when the final distribution should be made all of his heirs of the first generation would be dead, for the distribution was not to take place until the death of the last surviving son. He knew that no descendants nearer than grandchildren could then be in existence. It is very improbable that when he directed the payment to his heirs he had in mind the son who died before he did and the two whose

death he required should precede the distribution. It is more probable he had in view a distribution among persons living to receive his bounty than that he intended to put upon the trustee the burden of discovering possible assignees or legatees of the dead. He probably intended to prevent just what is here claimed—the attempted transfer of the fund by the sons to whom he took care not to give it. The final clause, in which the testator states his reason for placing the fund beyond the control of his sons while living, has no tendency to show he intended to intrust its disposition to them when dead. So long as the ultimate owner of the fund remained undetermined, the trustee was obliged to keep the fund intact. It is very clear the testator intended this should be done. It is certain he did not intend to put the property in such shape that the owners of the life interest and remainder could by agreement terminate the trust. Who would be the testator's heirs when the last surviving son died could not be known until the event occurred. To hold that the testator meant by his heirs those persons who answered that description at his death would be to conclude he incorporated into his will a provision which could be used for the destruction of his main purpose. It is not probable he so intended. Whether this possible result was known to him or not, it seems more probable that he intended to leave the final distributees of the fund indefinite, to be ascertained when the distribution should take place; that he did not have in mind his immediate descendants, his sons, who would then be dead, but his grandchildren who, as he might reasonably anticipate, would then, or some of them, be living. A gift to A for life, remainder to A in fee is a gift of a fee. The testator did not intend to give his sons such an estate in the fund or to create an estate which could be so treated, hence the conclusion seems irresistible that he did not intend to give his sons the reversion of the fund. As the language he used is capable of a construction which will effect the testator's purpose, it is the duty of the court to give effect thereto. In the fifth clause of the will the testator creates a fund for the benefit of his grandson, and provides in case of the grandson's death before the time specified for payment of the fund to him, the fund shall be paid "to such persons as shall then be my heirs, according to the laws of distribution then in force in this state." By the sixth clause he created a fund for his granddaughters and in the same contingency provided that upon the death of either the portion of such decedent should be paid "to such persons as shall be my heirs according to the laws of distribution then in force in this state." It is argued that the expressions

·used in these two clauses conclusively establish that when the testator said "my heirs at law" in the ninth clause, without the qualifying phrases before used, he meant those persons who were his heirs at his death and not those who might be at the time of distribution. While there is force to the argument, its weight is not sufficient to overbalance the inferences necessarily drawn from the general purpose of the testator in the ninth clause and his natural expectation as to the probable situation at the death of his last surviving son, inferable from the disclosures of the whole will. It is to be noted that the expression "who shall then be my heirs" of the fifth clause is not repeated in the sixth. Taken together these clauses seem to indicate an expectation of a possible change in the statute of distributions entertained by the testator or the scrivener (*Hardy* v. *Gage*, 66 N. H. 552), rather than a purpose to define the date when the question of heirship should be determined. The dates in each case are the attainment of the ages of 25 and 21 years respectively by the legatees, who were born in 1874, 1881 and 1883. If either died before the specified age, the testator may reasonably have concluded that there would remain heirs related to him in different degrees who might take by representation and may have sought to avoid confusion as to what law should govern. *Hardy* v. *Gage, supra.* No reason can be urged why a different scheme of division should have been entertained in these two clauses, while as has been seen, there are reasons for the conclusion that the testator intended by the language used in the ninth clause a division among his heirs ascertained at the time of division. As the three grandchildren constitute a class all related to the testator in the same degree, the trustee is advised to distribute the fund equally between them.

*Case discharged.*

All concurred.