Cheshire, }
June 24, 1926. }

### HARRY B. HOLMES, *Trustee, v.* ALICE G. ALEXANDER & a.

In a devise over to the heirs at law of the testatrix after a gift for life, the words "heirs at law," considered in connection with other language of the will, were construed to mean those persons who fulfilled that description at the death of the life tenant.

The question whether the identity of a testatrix's heirs at law, to whom a bequest is made subject to a life estate, is to be determined by the law as it stood at the time of making the will or as it was at the death of the life tenant, depends upon the intention of the testatrix.

*Held:* that the will in question, taken in its entirety, evidenced a benevolent disposition toward relatives in general, which would be more effectually carried out by construing it in accordance with the law in force at the termination of the life estate.

A bequest to an individual, subject to a life estate in another, creates a vested remainder, which passes to his surviving heirs upon the termination of the life estate, although the bequest contains no words of inheritance.

The fact that bequests in remainder are given to others "and their heirs" creates no distinction between the two classes of remaindermen, the words "and their heirs" being surplusage.

BILL IN EQUITY, by the trustee under the will of Clarissa A. Knapp, late of Winchester, for the construction of said will. The will was made June 28, 1880. The testatrix died July 4, 1881. Her only heir was a daughter, Sophia A. Knapp, who was named as beneficiary of two trust funds created by the second and sixth clauses of the will. These clauses read as follows:

"Second: I give and bequeath unto my executors the sum of fifteen thousand dollars to be held by them in trust, the income of the same to be paid to my said daughter Sophia annually, for her to use as she may need, and if at any time my said executors should consider it necessary for the support or comfort of said Sophia, I hereby authorize and empower them to use so much of said trust fund for her benefit as they may deem necessary or advisable.

And at the decease of my said daughter I do give and bequeath said sum to her children, if she should leave any surviving her.

If she should leave no issue, I then give and bequeath the said fifteen thousand dollars to my heirs at law."

"Sixth: I do hereby give and bequeath to my said executors a sum of money not to exceed sixteen thousand dollars, the same to be held by them in trust, and the income thereof to be paid annually to my said daughter Sophia during her life, and if at any time my said

executors should be of the opinion that it be necessary for the support or comfort of my said daughter, I hereby authorize and empower them to use so much of said trust fund for her benefit as they may deem necessary or advisable. And at the decease of my said daughter I do give and bequeath the said sixteen thousand dollars, or what may be left of the same, to her children, if she should leave any surviving her. If she should leave no issue, I hereby declare it to be my will that said trust fund be divided into sixteen equal shares, and I do hereby give and bequeath the said shares as follows, viz: three of said shares to the First Congregational Society in said Winchester, the income thereof to be by said society used to support preaching in their church. I give one share to each of the children of my late brother Isaac P. Alexander and their heirs. I give one share to each of the children of my late sister Mary A. Newton and one share to each of the children of my brother-in-law Ora H. Knapp."

The residuary clause reads as follows:

"Seventh: All the rest, residue and remainder of my estate, be the same real or personal I do hereby give, devise and bequeath the same to my said sister Charlotte A. Smith and her heirs forever."

Sophia A. Knapp received the income of said trust funds until the date of her death, August 23, 1925. She left no issue. At the time when the will was made in 1880 and at the time of Clarissa A. Knapp's death in 1881, her next of kin after her daughter consisted of two sisters and sixteen nephews and nieces. At the time of Sophia A. Knapp's death in 1925 both of these sisters and all but four of the nephews and nieces were dead, but the deceased nephews and nieces were survived by fourteen grand nephews and nieces, and one grandnephew, deceased, was survived by five children. Other facts appear in the opinion.

The following questions were transferred without ruling by *Burque*, J.

1. Who are the "heirs at law" mentioned in the last clause of section two of the will, who are now to take the fund created by section two?

2. In what proportion shall said "heirs at law" share in the trust fund thus created and now to be distributed?

3. Who now take under the provision of section six of the will, which gives "one share to each of the children of my late sister, Mary A. Newton"?

4. Who now takes under the provision of section six of the will,

which gives "one share to each of the children of my brother-in-law, Ora H. Knapp"?

5. Does any part of either fund fall into the residue to be distributed under the provisions of section seven of the will? If so, how much?

6. If any part falls into the residue, who will now receive that residue under section seven?

*Roy M. Pickard*, for the plaintiff.

*Philip H. Faulkner* and *Demond, Woodworth, Sulloway & Rogers*, for Mary E. Smith Holmes.

*Chester B. Jordan*, for the children and the estate of Dell N. Ford.

*Orville E. Cain*, guardian *ad litem*, *pro se*.

*Louis G. Hoyt*, for the children of Isaac Alexander.

BRANCH, J.    I.  The first two questions transferred by the superior court require that the meaning of the words "my heirs at law," as used in the second clause of the will, be determined.  The facts in this case are essentially so similar to those involved in the cases of *Hardy* v. *Gage*, 66 N. H. 552, and *Remick* v. *Merrill*, 80 N. H. 225, that the reasoning of those cases may properly be applied without restatement.  The trustee is accordingly advised that the heirs at law of Clarissa A. Knapp, who now take the fund created by the second clause of her will, are those persons who fulfilled that description at the death of Sophia A. Knapp.

Counsel for the surviving nephews and nieces does not seriously question the correctness of this conclusion, but it is argued that in ascertaining what persons answer the description of "heirs at law," the law which existed at the time when the testatrix made her will and when she died must be applied, and not the law which was in force when the bequest became effective upon the death of Sophia.  This question is important because prior to 1883 the statute of distribution allowed no descent by representation among collateral heirs, except to the children of deceased brothers and sisters (G. L., c. 203, s. 3), while the amendment of 1883 (Laws 1883, c. 72, s. 1), which is now in force (P. L., c. 307, s. 3), extended inheritance by representation to the grandchildren of deceased brothers and sisters.  If the distribution of the fund is to be governed by the law in force

in 1881, then the surviving nephews and nieces take it all. But if distribution is governed by the law in force at the death of Sophia in 1925, then the grand nephews and nieces take by representation the shares of their parents.

In support of their position, counsel for the surviving nephews and nieces refers to the case of *Pinkham* v. *Blair*, 57 N. H. 226, where the court said: "It may be presumed however that he [the testator] was familiar with our statute of distributions, and of the practice under it, and hence made his will with reference to the law as understood in this state."

On behalf of the grand nephews and nieces reliance is placed on the case of *Hardy* v. *Gage*, 66 N. H. 552, where the court found that in using the words "my heirs at law" the testatrix "had in mind the persons who would be her heirs at law at the death of" the life tenant; and that the question who are entitled to take under such a devise is to be determined by the law as it stood when the devise took effect.

All authorities in this state agree that the problem is to be solved by determining the intention of the testatrix as a question of fact, and hence "it follows that former decisions upon the construction of wills are not to be given the force of binding authorities in a given case, unless the language of the will and circumstances are so far identical as not to admit of a reasonable distinction." *Remick* v. *Merrill*, 80 N. H. 225.

In the present case the testatrix provided that final distribution of the fund should not be made until the death of her daughter, then a woman thirty-six years of age. She must therefore have realized that many years might, as they did in fact, elapse before that event took place. She must have known that it was impossible to foresee which of her relatives would be alive at that time. Realizing the impossibility of knowing who would be the natural objects of her bounty at the time of Sophia's death, the testatrix was apparently content to have the final distribution of the fund among her surviving relatives determined by operation of law. Knowing that the persons who would eventually receive her bounty would be governed by the happening of an unlimited number of events over which she had no control, there is no reason to infer that she intended to exclude a change in the statute by the legislature from the number of such events. Her language, under the circumstances, is fully as consistent with the conclusion that she had in mind "an expectation of a possible change in the statute of distribution" (*Remick* v. *Merrill*, *supra*),

as with the presumption that she "was familiar with our statute of distribution," as it existed in 1880, and made her will with reference to it. *Pinkham* v. *Blair, supra.*

It is argued that "it is evident from the will itself" that the testatrix had her nephews and nieces in mind when she used the words "my heirs at law" because "there is not a clause in it that does not mention either a sister or nephew or niece." This statement is not in accord with the facts. The first clause of the will makes an unrestricted gift of five thousand dollars to the daughter Sophia. The second clause, now under consideration, contains no specific reference either to sisters or nephews or nieces. The remaining clauses of the will do not evidence any controlling interest in the nephews and nieces. On the contrary the clear purpose of the testatrix was to provide first of all for her daughter, and second for her sister Charlotte. The fourth, fifth and sixth clauses do contain bequests in which nine of her nephews and nieces might share, but there is no gift to any of the other seven. Consequently the argument from the context of the will that Mrs. Knapp had her nephews and nieces definitely in mind when she used the words "my heirs at law," is not convincing. It is true that she could hardly have expected either of her sisters, who were elderly women when the will was made, to survive her daughter. She might reasonably have expected more than four of her sixteen nephews and nieces to do so, but there is nothing in the will to indicate that she intended to establish a tontine fund for the benefit of such survivors. The will evidences a general family interest and affectionate regard for her blood relatives, and that construction of her language which gives the widest distribution of her property. among her kin seems best to accord with her general beneficent purpose. Consequently in determining who were the heirs at law of the testatrix at the death of Sophia the present 'law is to be applied.

Such an application of the law to the facts stated in the case leads to the conclusion that the heirs at law of the testatrix are her four surviving nephews and nieces and the surviving children of six other nephews and nieces who take by representation the shares of their parents. The trustee is therefore advised in answer to the second question transferred by the court that the fund must be divided into ten parts and distributed to the following persons: one-tenth to Alice G. Alexander, one-tenth to Frank E. Alexander, one-tenth to Ada Alexander, one-tenth to Imogene Alexander Benson, one-tenth to the children of Harvey Jewell, one-tenth to the surviving child

of Marshall Jewell, one-tenth to the children of Evelyn Newton Potter, one tenth to the surviving children of Duane Newton, one-tenth to the children of Dell Newton Ford, one-tenth to the surviving children of Charlotte Newton Potter.

Since the statute does not allow descent by representation among collateral heirs except to the grandchildren of deceased brothers and sisters, the great grand nieces and nephews of the testatrix are barred from inheritance.

II. The questions submitted by the superior court with reference to the sixth clause of the will arise from the fact that the five children of Mary A. Newton and the four children of Ora H. Knapp, who are named as the recipients of nine-sixteenths of the trust fund created by this clause of the will, all died before Sophia A. Knapp. It is contended by the legatee of Charlotte A. Smith that the bequests to them thereupon lapsed and that their shares fell into the residue of the estate.

The argument is that by making a gift to the children of Isaac P. Alexander "and their heirs" in one sentence and in the following sentence making gifts to the children of Mary A. Newton and Ora H. Knapp alone, the testatrix indicated an intention that Isaac's children should receive an unlimited gift, but that the children of Mary and Ora should take the bequests to them only if they were alive at Sophia's death to receive them. It is said that "any other construction must ignore the words 'and their heirs' and render them nugatory."

It has never been suggested that the so-called "words of inheritance" are necessary for the making of an unlimited gift of personal property. They have never been necessary in this state for the granting of an estate in fee. On the contrary the intention of the grantor is always given effect if possible. *Smith* v. *Furbish*, 68 H. N. 123. This rule of the common law has also had for many years the added force of statutory enactment. P. L., c. 297, s. 6. Hence the words "and their heirs" as used in connection with the gift to Isaac's children are nugatory and must be regarded as mere surplusage. The children of Isaac would have taken an unlimited gift if they had been omitted. The use of these words gave them nothing more.

Does the presence of these words in a sentence where they are superfluous and nugatory operate to limit the bequests contained in the following sentence from which they were omitted? Such a result would hardly be expected and no such conclusion is justified in the present case.

It was the obvious purpose of the testatrix to provide in the sixth clause of her will for the complete and final disposition of the trust fund created thereby. The language used in the bequest to the children of Mary and Ora is sufficient in law to give them an unlimited gift. If given its usual interpretation under the law of this state, it operated to vest in these children title to their portions of the remainder of the trust fund after the death of Sophia, subject only to be divested upon the birth of a child to Sophia. If it had been the intention of the testatrix that they should have nothing unless they survived Sophia, the obvious means of making this clear would have been to add to the last sentence of clause six the words, "provided they survive my said daughter." It can hardly be supposed that the draftsman of the will, who is said to have been a lawyer and hence presumably familiar with the law of New Hampshire, attempted to accomplish this result by the clumsy method of adding three superfluous words to the previous bequest, in the expectation that as a sort of backlash they would have the effect of limiting the gifts subsequently made. The use of the words "and their heirs" in one place and their omission in another are much more readily explained upon the theory that the scrivener was careless, than upon the theory that they indicated a difference of intention on the part of the testatrix. The scrivener "might prefer the useless and aimless risk of an attempt to exclude an estate of inheritance by a refinement in the use and nonuse of surplusage which not one person in a thousand would understand. But such possibilities have no bearing on the question of probability." *Doe*, C. J., in *Smith* v. *Furbish*, 68 N. H. 123, 160.

The trustee is therefore advised that each of the children of Mary A. Newton and Ora H. Knapp had during the lifetime of Sophia A. Knapp a vested title to one-sixteenth of the remainder of this trust fund. These interests became a part of the personal estates of said children upon their deaths and their respective shares of the fund should now be paid to their legal representatives, to be disposed of as assets of said estates.

*Case discharged.*

ALLEN, J., did not sit: the others concurred.