Rockingham,
Dec. 6, 1927.

ARLINGTON MILLS *v.* SALEM.

SAME *v.* SAME.

*Tuttle, Wyman & Starr (Mr. Wyman* orally), for the plaintiff.

*Warren, Howe & Wilson (Mr. Howe* orally), for the defendant.

MARBLE, J. "That the superior court has power to reserve without ruling important questions of law for the opinion of the supreme court is settled." *Manchester Amusement Co.* v. *Conn,* 80 N. H. 455, 461; *Glover* v. *Baker,* 76 N. H. 261. The plaintiff's exception to the order of transfer is therefore overruled.

The defendant contends that the petitions should have been dismissed because the plaintiff failed to comply with the requirements of P. S., *c.* 57 (P. L., *c.* 62), relating to the filing of inventories. The inventories in question were sworn to by the treasurer of the Arlington Mills before a notary public in Massachusetts. The fact that justices of the peace, selectmen, and assessors are specifically named in the statute as officers "empowered to administer" the prescribed oath

(P. S., c. 57, s. 8; P. L., c. 62, s. 6) does not render such officers the sole officials for that purpose. By conferring this authority on selectmen and assessors the legislature apparently intended to increase rather than to limit the number of officials so authorized.

It is suggested that the inventories purported to enumerate the property of the plaintiff's treasurer rather than that of the plaintiff itself. If this can be said to constitute a technical objection, it is obviated by the findings of the referee that the inventories were executed and filed in good faith (*Amoskeag Mfg Co.* v. *Manchester*, 70 N. H. 200, 202), and if in any way legally insufficient, that such insufficiency was due to accident, mistake, and misfortune (*Kerby* v. *Charlestown*, 78 N. H. 301, 307, and cases cited); that the inventories · as filed gave to the assessors all the information legally necessary to aid them in making their invoices; that they were filed with no intent to mislead the assessors, and that the assessors were not misled. *Melvin* v. *Weare*, 56 N. H. 436. "The statute makes the proceeding for the abatement of a tax a summary one, free from technical and formal obstructions," *Manchester Mills* v. *Manchester*, 58 N. H. 38, 39. It should be "construed liberally, in advancement of the rule of remedial justice which it lays down." *Trust &c. Co.* v. *Portsmouth*, 59 N. H. 33; *Dewey* v. *Stratford*, 40 N. H. 203, 207.

The findings of the referee also answer the defendant's claim that the plaintiff did not render a full account of its ratable estate.

The fact that the plaintiff did not offer to the assessors evidence that its property was overvalued by them or that the property of the other taxpayers of the town was undervalued for taxation is not important. The referee has found that such a claim was made in the petition, but that a controversy arose at the hearing over a rule of law, and that this resulted in a disagreement which would have rendered futile the presentation of the evidence. Selectmen may abate a tax for "good cause shown." P. S., c. 59, s. 10 (P. L., c. 64, s. 13). But this does not mean that the plaintiff on appeal is restricted to a retrial of only such causes as were supported by evidence at the original hearing. The plaintiff is "aggrieved" by the refusal to abate, and his appeal is in no respect a mere review of the former proceedings. "The application by petition to the court is an appeal from the refusal of the selectmen to make such an abatement as the appellant asks, and is practically an appeal from the assessment." *Edes* v. *Boardman*, 58 N. H. 580, 584. The referee did not err in denying the defendant's motion to dismiss the petitions. See *Bean &c. Co.* v. *Jaffrey*, 80 N. H. 343, 345.

Both parties claim that the referee has improperly dealt with the question of valuation. The plaintiff contends that the total value found is inconsistent with certain special findings on the subject. It is argued that the plaintiff as a riparian owner had a legal right to use the waters of the Spicket river at its mills in Lawrence, and that such use was not taxable in Salem; that the structures there erected were designed solely for the purpose of regulating this use, and could not in the very nature of the case be more valuable than the use itself. The referee found specially that a reasonable price for mills engaged in like enterprises to pay for process-water was $10 per million gallons; that the plaintiff consumed on an average ten million gallons per day for 300 days in the year, and that the capitalized value of this use, if the plaintiff's theory were adopted, would be $400,000 to $500,000. From this, the plaintiff, invoking the rule that every appraisal for taxation must "make the values of the parts no greater than the value of the whole" (*Cocheco Mfg Co.* v. *Strafford*, 51 N. H. 455, 479), argues that since the reservoirs were mere "regulators" and could therefore constitute only a part of the thing regulated, their value as found by the referee must be excessive as a matter of law.

The difficulty with this argument lies in the erroneous assumption that the referee has attempted to place a value on the plaintiff's process-water rights and has included the reservoirs in that figure. The plaintiff argued to the referee, as it argues here, that textile mills must use a vast amount of process-water and that no one would undertake to locate a new mill where such water was dear; that before the erection of the reservoirs in question practically all the water of the Spicket river was available to the plaintiff in Lawrence at low cost, and that in determining the value of the reservoirs as Salem property the expense of construction should be largely disregarded, since the benefits derived therefrom were not reflected in Salem value, but in the value of the Lawrence use, which the plaintiff had previously owned and which was not taxable in Salem.

The referee understood it to be the plaintiff's claim "that so far as this storage basin has commercial value, the commercial value is attached to the mills in Lawrence where the water is used" and that the value of the properties should therefore be determined "by the amount that competitive mills might fairly have to pay in the market for a similar supply of such water." In order that the plaintiff might have the requisite data to test this theory, the referee found that "in the Merrimack and all other markets which might be at all comparable, the prices for appreciable amounts of water for similar

purposes range from $1 per million gallons to $19 per million gallons," that the "fair average of these prices would be approximately $10 per million gallons," and that under the conditions in which the plaintiff is situated, a price approaching the average would be a reasonable price. But his finding of value is not based on the plaintiff's theory. On the other hand, he expressly repudiates that theory, declaring that each mill "has a water supply problem of its own, according to its geographical and topographical situation," and that the position of the plaintiff is unique, since its only market for water is in the Spicket valley.

There was evidence to support this finding. As the report is understood, the plaintiff's theory is rejected merely because other mills are so differently situated that they afford no adequate basis of comparison.

The plaintiff is correct in its contention that "the property in any thing consists in the use." *Barker* v. *Company,* 78 N. H. 571, 573. It was entitled, therefore, to establish by proper evidence the value of its entire water rights for process uses and to insist that the reservoirs, which constitute only a part of those rights, could not be found to exceed such total value.

The plaintiff further complains that the referee has not properly differentiated between the riparian use of the water in Lawrence and the effective use of the storage system as such. Yet the report states that "the referee has taken into consideration the fact that this property in Salem has greater value because it can be controlled and profitably used in Salem by the plaintiff for the benefit of its mills situated in Lawrence, and has considered that the value of the plaintiff's mills in Lawrence may be increased by reason of these rights being owned and capable of control for its benefit," and that "in finding the value of the properties in question situated in Salem, the referee has made such adjustment and apportionment of such advantages between the plaintiff's reservoir rights in Salem and its mills situated in Lawrence as seem to him lawfully and justly to belong to each property." Moreover, the referee specifically declares that he has not included in his valuation "the value of any of the rights of the plaintiff as a riparian owner on the Spicket river at Lawrence." And while the plaintiff asserts that the referee has done precisely the thing which he says he has not done, clearly this assertion is not demonstrably true as a matter of law. In a case where it is necessary to consider interdependence of values, the problem of fair adjustment is one of fact. *Cocheco Mfg Co.* v. *Strafford,* 51 N. H. 455, 478.

On the assumption that the referee may have based his finding of value on the cost of construction, the plaintiff argues that such cost cannot represent market value within the meaning of the statute, since the referee has found that the investment in this case is analogous to insurance and every principle of insurance requires that the annual value be determined by a distribution of the outlay over a long series of years. Although this argument may be sound as applied merely to insurance, yet assessors are obliged by law to appraise all taxable property "at its full and true value" (P. S., c. 58, s. 1; P. L., c. 63, s. 1), and the fact that certain real estate may be held by the owner for auxiliary use does not permit an appraisal of this property on any other basis than that demanded by the statute.

As mill properties are conducted to-day, the maintenance of storage reservoirs both for power and process use are essential units in the value of the mills themselves. If good business sagacity sanctions the expenditure of a specific sum for the construction of such a reservoir in a particular locality, it cannot be claimed that this expenditure is not evidence of the value of the structure in that locality. Nor is this conclusion inconsistent with the plaintiff's contention that the value which is taxable in Salem is the value for productive use within the taxing district. Storage capacity is one of the chief elements to be considered, and that element is not annexed to a distant mill-site but is inherent in the structure itself. *Amoskeag Mfg Co.* v. *Concord*, 66 N. H. 562; *Winnipiseogee Lake &c. Co.* v. *Gilford*, 64 N. H. 337; *Cocheco Mfg Co.* v. *Strafford*, 51 N. H. 455. The plaintiff concedes that the investment at Salem is profitable, and that it was justified by sound business judgment. Under such circumstances, the referee was warranted in finding that the property in question was worth what it cost.

It follows that the motion to recommit the report to the referee for the correction of alleged errors in valuation is without merit.

The same is true of the defendant's contention that the value of the storage system in Salem is definitely fixed by the cost of acquiring another system elsewhere in the Spicket valley. It is obvious that no storage project can ever be the exact duplicate of another, and that many diverse elements of value must of necessity be disclosed by a comparison of any two systems. Especially is this true when one of those systems is purely a hypothetical one. While it is admitted that the plaintiff is financially able to pay the market value for a water supply reasonably adequate to its needs, it does not follow that the plaintiff or any other manufacturer would pay more than the cost

of the present system to acquire a substitute. The answer to the defendant's inquiry, "If the property had been owned by a third party on assessment day, what would the plaintiff or other customers probably have paid for it?" depends upon many conditions, including the demand for storage development and the price at which a mill owner would deem such development feasible. The question is peculiarly one of fact, and "facts cannot be found by rule." *Remick* v. *Merrill*, 80 N. H. 225, 227. The referee correctly held that the cost of substitution was merely evidence of value.

The defendant makes the alternative claim that the appraisal should have been "about $1,000,000" because the evidence required the finding that the cities of Lawrence and Methuen were customers for the property on April 1, 1923, at substantially that price. The evidence that these cities would have purchased the plaintiff's property at that or any other price is far from conclusive, and the defendant's contention is effectually disposed of by a negative finding.

The plaintiff relies on various exceptions to the evidence. Those of the defendant are waived.

The concession that the enterprise is a profitable one and justified by good business judgment is not necessarily an admission that the property is worth what it cost. The plaintiff does not agree that the investment is sound if taxed on a cost-valuation. It is sometimes good business to pay more for a thing than it will sell for in the market. It was therefore competent for the plaintiff to show, if it could do so, that more money was spent on the reservoirs than they were fairly worth, and that the net result was a "capital loss" which could not "be translated by the town of Salem into market value for the purpose of taxation with its resulting permanent annual burden." The defendant called the plaintiff's treasurer, Albert H. Chamberlain, as a witness. On cross-examination plaintiff's counsel asked: "Whether or not, in your opinion, the price paid by you for the land that you bought up there in Salem was in excess of the fair value of what you bought?" The defendant objected unless the referee thought the witness had had "some experience in Salem land values" that would be of aid to him. The referee ruled: "I think I will exclude it, whether he has or not, subject to plaintiff's exception." And in answer to plaintiff's inquiry, "Is that on the ground of lack of qualification?" he continued: "I won't make that finding, but I don't think it is good evidence, . . . they paid the price. As I said before, the conditions under which they paid the price is competent evidence, but whether or not they paid too much, I don't believe I should allow. . . . I don't

believe that Mr. Chamberlain, representing the Arlington Mills is in a position to do that." Whereupon the plaintiff excepted.

The worth of property can always be shown by the "opinions of witnesses, qualified to judge" of its value (*Cocheco Mfg Co.* v. *Strafford*, 51 N. H. 455, 476), and there is no rule of law which estops the person who has made the purchase from showing by his own testimony (if he is qualified to testify on the subject) that the thing bought is actually worth less than the price paid. By the ordinary rules of evidence, which must here be applied (*Boston & Maine R. R.* v. *State*, 76 N. H. 515, 520), the testimony was improperly excluded.

Subject to plaintiff's exception, a selectman of the defendant town, testifying not as an expert but merely "as one of the assessing officials," was permitted to state certain details of the assessment. It is suggested that although the rule laid down in *Boston & Maine R. R.* v. *State*, 76 N. H. 86, 91, prohibited the plaintiff from introducing this evidence, the assessors should be allowed "to sustain their appraisal by testifying how they made it." This argument overlooks the fact that no question of impeachment is here involved. Since the hearing before the referee was in the broadest sense of the term a new trial, to which the plaintiff was entitled as of right, the former finding was immaterial. "The statement amounted to nothing more or less than evidence of the conclusion of one tribunal . . . upon a question of fact, to influence another tribunal having a similar question before it . . . to find the fact in the same way. That such testimony is incompetent is settled by the repeated decisions of this court." *Elwell* v. *Roper*, 72 N. H. 254, 257, and cases cited; *Olney* v. *Railroad*, 73 N. H. 85, 89.

The questions presented by the remaining exceptions are not likely to arise upon a retrial of the case and therefore need not be considered. The order "new trial" does not preclude the plaintiff from asking the superior court to limit the issues to be retried. "The question how far beyond the correction of the error the new trial must go in order to afford a fair trial, is one of fact." *West* v. *Railroad*, 81 N. H. 522, 533.

In order to avoid a possible repetition of error, attention is called to the method by which the referee has arrived at the amount of the abatement. In making his computation he has found the true value of all the taxable property in Salem, and on the basis of that valuation established a new tax rate. The amount of the tax which the plaintiff should have paid has been determined by applying that rate to the newly found value of the plaintiff's property. By this mode of calcula-

tion the plaintiff would be required to assume more than its share of the tax burden because the taxes received from the other landowners were assessed at a different rate and on a lower valuation. "As it appears that by the appraisal made by the assessors the taxable estate in the city other than the plaintiffs' was appraised at less than its true value, the appraisal of the plaintiffs' whole property at the same ratio would assign to the plaintiffs their share of the burden." *Amoskeag Mfg Co.* v. *Manchester*, 70 N. H. 200, 206; *Winnipiseogee Lake &c. Co.* v. *Laconia*, 73 N. H. 337, 339.

*New trial.*

All concurred.