In re ELDREDGE BREWING CO., Inc.

No. 4425.

District Court, D. New Hampshire.

April 11, 1940.

Robert W. Upton, of Concord, N. H., for debtor.

Louis Wyman, of Manchester, N. H., for City of Portsmouth.

MORRIS, District Judge.

This proceeding involves a claim of the City of Portsmouth for taxes assessed against the debtor as of April 1, 1938, in the sum of $6,292.56.

### Preliminary Facts.

On June 3, 1938, the corporation filed in this court a petition for reorganization. The court made an order that claims be filed on or before August 23, 1938, and in compliance with this order, on August 1, 1938, the City of Portsmouth filed a proof of claim for taxes in the above amount.

The first formal objection to the allowance of this claim was filed on February 2, 1940. The objections of the debtor, briefly summarized, are that the property of the debtor was appraised at more than its full and true value; that the valuations placed upon the property for the purposes of assessing the taxes subject the debtor to more than its just and proportionate share of the public expense, and are discriminatory, disproportional, and unreasonable and unlawful because imposed for unlawful purposes and for application to uses other than public uses; that said taxes are in violation of the Constitution of the State of New Hampshire and the Fourteenth Amendment of the Constitution of the United States.

On February 10, 1940, the City of Portsmouth in answering the objections of the debtor denied each of the allegations contained therein and closed with a plea to the jurisdiction of the court to inquire into the propriety of the assessment or the purposes for which such assessment was made, or the valuations placed upon the property of the debtor by the proper tax appraisers of Portsmouth, or to entertain any alleged claim with respect to said taxes in the absence of any allegation or proof that the debtor has complied with or been denied a remedy under the statutes of New Hampshire by the state courts and prays that the objections be set aside and the taxes for the year 1938 be allowed as a preferred claim.

The case came on for hearing February 14, 1940, before the court on the question of jurisdiction. As the substantive question was that of allowance or disallowance of the claim in a bankruptcy proceeding the court took jurisdiction and the case came on for hearing on its merits February 20, 1940.

The City of Portsmouth relies upon two important grounds of defense, first, that the debtor failed to exhaust its statutory remedies for abatement of its tax provided in Chapter 64, Section 13, Public Laws of New Hampshire, as amended by Laws of 1939, Chapter 46, and section 14, and, second, laches in failing to file its objections seasonably.

### Laches.

As above stated the tax in question was assessed as of April 1, 1938. The petition for reorganization was filed June 3, 1938. Bills for the tax were sent out on July 1, 1938, and came into the possession of the debtor soon thereafter. The city filed its claim in this court August 1, 1938, and a petition for abatement was filed with the appraisers in August, 1939. This petition was informally heard and denied. It related to the taxes for 1938 and those assessed as of April 1, 1939. The tax of 1939 stands on a different basis from that of 1938, in that it falls within the expenses of administration of the estate. From the argument of counsel it appears that various attempts to compromise the tax claims have been made without success. Beginning July 1, 1938, down to February 14, 1940, there were eighteen hearings in court covering various phases of the reorganization proceedings, a number of them involving the allowance of contested claims, and although it was known that the city's claim had not been allowed, and had been the subject of attempts to compromise, no effort was made by the city to have its claim brought forward for hearing or allowance. In fact the record does not disclose that the city was ever represented at any of these hearings by counsel. The final disposition of the reorganization proceedings on the court docket has been held up pending the final disposition of the tax claims and one other contested claim and the debtor should not be barred by laches from filing formal objections to the allowance of the tax claims and having the matter finally de-

termined. If the debtor was guilty of laches so also was the City of Portsmouth.

### State Statutory Remedies.

The city takes the position that the debtor cannot maintain an action for abatement of its taxes because it failed to file an inventory of its property for the year 1938 as provided in N. H. Public Laws, Chapter 62, Section 6, which requires that: "Every person and every corporation, by its president or other principal officer, shall fill out the blank inventory in all respects according to its requirements, and subscribe and make the required oath thereto before some justice of the peace or a selectman or assessor, either of whom is empowered to administer the same, and shall deliver, or, in case of non-resident persons or corporations, mail such inventory to the selectmen or assessors on or before April fifteenth of that year."

It is not controverted that a taxpayer who fails to comply with this statute forfeits his right of appeal in the state court.

■■ The testimony relative to the filing of the inventory in this case is conflicting. The president testified on behalf of the corporation that such an inventory was filed for the year 1938. His private secretary, who is also office manager, testified that an inventory blank for that year was filled out and sworn to before her as notary public, and that it was her duty to see that this was done. She admitted that she had no present definite recollection about it, but it was her custom to see that these inventories were filed. The evidence on behalf of the city was to the effect that when the inventories were returned they were filed away alphabetically and that a search of the records for the year in question failed to disclose any inventory for the year 1938. This at most is negative testimony. The testimony for the debtor, aided by the presumption that corporate officers performed their corporate duty, leads me to the conclusion that it is more probable than otherwise that the statute was complied with and that the inventory has been taken from the files and mislaid.

■ An inventory sworn to before a notary public is legally sufficient. Arlington Mills . v. Salem, 83 N.H. 148, 140 A. 163.

The matter of filing the inventory does not appear to be of prime importance in this case because of the fact that the debtor failed to comply with Public Laws, Chapter 64, §§ 13, 14, which provides as follows:

Section 13. "Selectmen, for good cause shown, may abate any tax assessed by them or by their predecessors."

Section 14. "If they neglect or refuse so to abate, any person aggrieved, having complied with the requirements of chapter 62, may, within six months after notice of such tax, and not afterwards, apply by petition to the superior court in the county, which shall make such order thereon as justice requires."

The six months from the date of notice of the tax having long since expired without any appeal having been taken to the superior court, the taxpayer has lost its remedy under the provisions of the New Hampshire statutes. If it now has any rights to secure an abatement or reduction of the tax assessed in 1938, it must be because of some applicable provision of the Bankruptcy Act, and more particularly the Act of June 7, 1934, and amendments thereto, 11 U.S.C.A. § 207, under the provisions of which this action was commenced.

■ This case is not governed by the Chandler Act, 11 U.S.C.A. § 1 et seq., which did not become effective until September 22, 1938, more than three months after the filing of the present action.

The only provision of the prior act relating to the payment of taxes is found in section 64, sub. a, 11 U.S.C.A. § 104, sub. a, note, which provides that: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

■ Under the provisions of the statute it appears that if any question arises as to the legality of the tax, the question is wide open for the determination of the bankruptcy court.

In the case of In re Fisher Corporation, D.C., 229 F. 316, 317, Judge Morton has this to say: "The power explicitly given to the bankruptcy court to hear and determine 'any question' as to the 'amount or legality' of the tax would seem to imply that it is not bound by the action of

the taxing authority, but may decide the question for itself; and the right is not limited by the statute to such questions as the bankrupt might still have raised against the tax at the date of the bankruptcy proceedings."

See, also, New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284; In re W. P. Williams Corporation, D.C., 265 F. 401; In re Heffron Company, D.C., 216 F. 642; Dickinson v. Riley, 8 Cir., 86 F. 2d 385.

Counsel for the claimant makes the point that the matter of the Eldredge Brewing Company is not an ordinary bankruptcy case but is a proceeding for corporate reorganization under 77B, 11 U.S.C.A. § 207, and that Section 64, sub. a, of the Bankruptcy Act has no application unless reorganization fails and unless adjudication and liquidation follows.

Turning now to the provisions of Section 77B, subsection k, wherein it is claimed that the remedy provided in Section 64, sub. a, is not extended to cases under 77B involving corporate reorganizations, City of Springfield v. Hotel Charles Co., 1 Cir., 84 F.2d 589, I hesitate to rule that there may not be exceptional cases wherein the court should exercise control over tax bills presented for allowance.

In re 168 Adams Building Corporation, 7 Cir., 105 F.2d 704, 707, which was a case of corporate reorganization, Judge Kerner, speaking for the court, after discussing the provisions of Section 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a, says:

"We are convinced from our study of the matter, and the District Court so decided, that the court either operates under Section 64a by implication, * * * or exercises the same power to pass upon similar tax claims from necessity. Settling the validity of tax claims in proceedings to reorganize corporate debtors is as necessary as in proceedings to liquidate corporate debtors. * * *

"Much uncertainty exists in the cases as to the nature and extent of the power thus conferred upon the courts by the Bankruptcy Act. * * *

"We do conceive, however, and believe that when a tax claim is contested, usually on the theory that the tax is not 'legally due and owing,' the court must first pass on the validity of the tax before it can decide whether to allow or disallow the claim against the estate of the debtor."

Some of the reasons which moved Congress to authorize the court to hear and determine claims for taxes as permitted by Section 64, sub. a, are not present in corporate reorganization cases. For instance, the speedy determination and settlement of the bankrupt's assets and the rights of participating creditors are not so urgent. The fact that Congress failed to include the provisions of 64, sub. a, in the act authorizing corporate reorganization is strongly indicative of a legislative purpose to remove tax abatements from the control of the bankruptcy court to the administrative machinery of the taxing sovereign. If there are exceptional measures than those provided by the taxing power this is not one of them.

The debtor's counsel raises a question as to the sufficiency of the evidence to sustain a finding that any tax was legally assessed against the Eldredge Brewing Company.

P.L. Chapter 64, Section 5, provides that: "A fair record shall be made of every invoice taken by the selectmen, and of all taxes by them assessed, in a book of records of the doings of the selectmen in their office, which shall be the property of the town; and a copy thereof shall, prior to July first, be left with the town clerk, or the original invoice and assessment shall be so left and recorded by him, and both records shall be open to the inspection of all persons."

The evidence disclosed that such a record was not kept and recorded. The only evidence admitted tending to establish a valid assessment against the debtor corporation was a volume coming from the office of the collector of taxes purporting to contain the names of all taxpayers, the valuation of their property, and the amount of the tax assessed. To this volume was attached the warrant of the assessors by them signed directing the collection of the taxes therein contained.

Counsel argued that the warrant for the collection of taxes was like an execution issued to a sheriff from a court of justice without any judgment to be found on the court records.

I cannot hold as a matter of law that the failure of the assessors to make and record a record of all the taxes by them assessed in accordance with the statute above quoted invalidates the entire tax assessment for the City of Portsmouth for the year 1938.

It is doubtful if the records disclosed would sustain a valid tax deed to establish which it is necessary to prove with particularity every step from the posting of the warrant for the election of officers to the record of the sale of the property.

■ I hold that the collector's warrant which is given under the hand of the assessors is evidence from which I can and do find that a proper and valid assessment was made.

■ I hold that the failure to make and lodge with the city clerk the record required by the statute is not fatal to the assessment. The neglect or failure of the selectmen of a town or the assessors of a city to perform their statutory duties ought not to be visited upon the municipality, otherwise it might find itself without the proper means to carry on its functions.

In the case of Jaffrey v. Smith, 76 N.H. 168, 80 A. 504, 505, Peaslee, J., says: "The view that the record is the assessment in the sense that it is the essence of the judicial act of fixing the amount of the tax is not the law in this state. * * * 'The subsequent proceedings, such as recording the invoice and assessment in their own book, and causing them to be recorded by the town clerk, are for the purpose of preserving the memory and making a publication of their doings. The omission of any or all of them cannot vitiate the assessment, or vacate the warrant which has already gone forth for the collection of the taxes. These things they are required to do, and to do seasonably, that people may inspect the records when made, and not that there may be a valid assessment, or that an assessment already made and committed for collection may remain good.' "

■ Evidence was submitted to establish the value of the debtor's taxable property. In this state property is supposed to be assessed for purposes of taxation at its true market value. The testimony offered discloses nothing more than the ordinary case of a taxpayer claiming that his property has been overassessed and that the tax assessed against him is discriminatory. These questions could have been determined by a petition for abatement followed by an appeal using the ordinary administrative procedure in the state court. This was not done and the debtor is barred from seeking such a remedy by lapse of time. The case is not one of liquidation and I find no warrant in the Bankruptcy Act for making a redetermination of the tax.

The case is not of such an unusual character as to warrant the extension of section 64, sub. a, of the Bankruptcy Act to it by implication or necessity.

From what I have said it is unnecessary for me to enter into an analysis of the evidence bearing upon the true value of the property assessed, and it seems unwise to do so in view of the fact that proceedings are pending in the state court for a redetermination of the 1939 tax.

The claim of the City of Portsmouth is allowed as a preferred claim in the sum of $6,292.56, with interest at 6% from December 1, 1938.

It is so ordered.