Merrimack
No. 2003-485

GGP STEEPLEGATE, INC.

v.

CITY OF CONCORD

Argued: February 11, 2004
Opinion Issued: March 25, 2004

*Murphy & Michaels, LLP*, of Boston, Massachusetts (*Anthony M. Ambriano* on the brief and orally), for the petitioner.

*Paul F. Cavanaugh*, city solicitor, of Concord, by brief and orally, for the respondent.

NADEAU, J. The petitioner, GGP Steeplegate, Inc. (Steeplegate), appeals an order of the Superior Court (*Fitzgerald*, J.) granting the motion of the respondent, City of Concord (city), to dismiss Steeplegate's petition for real estate tax abatement for lack of jurisdiction. *See* RSA 76:17 (2003). We reverse and remand.

On April 1, 2001, Steeplegate owned a shopping mall located in Concord. Using the cost approach to valuation, the city appraised Steeplegate's real property and accordingly assessed taxes. On February 21, 2002, Steeplegate timely filed a petition for tax abatement with the city's board of assessors (assessors). In filing its application, Steeplegate utilized the form provided by the board of tax and land appeals (BTLA) pursuant to RSA 76:16, III (2003). Section E of the application instructs the applicant to explain the reasons why it should be entitled to an abatement:

> An abatement may be granted for "good cause shown." Generally, this means a disproportionate assessment or an assessment based on an error. It can also include other reasons. This form is based on a disproportionate or erroneous assessment. If your request is based on other reasons, please state them with specificity. If the application is based on a disproportionate assessment, the taxpayer has the burden to prove disproportionality. Therefore, state with specificity all of the reasons supporting your application. Statements such as "taxes too high," "disproportionately assessed" or "assessment exceeds market value" are insufficient.
>
> Generally, specificity requires the taxpayer to present material on the following (all may not apply):

1) **physical data**—incorrect description or measurement of property;
2) **market data**—the property's value on the April 1 assessment date, supported by comparable sales, income analysis or a professional opinion of value; and/or
3) **assessment data**—the property's assessment exceeds the general level of assessment shown by comparing the property's assessment with assessments on other properties in the municipality.

When completing section E of the form, Steeplegate wrote, "Income Approach Analysis does not support current assessment."

On March 14, 2002, the director of real estate assessment for the city informed Steeplegate that he would recommend to the assessors that they default Steeplegate's application because it "lack[ed] sufficient specificity to establish the assertion that the assessment is excessive." The director provided Steeplegate with the information necessary to cure the default and explained that once a default is issued, a taxpayer has twenty days to cure it. Steeplegate submitted no further documentation, and on May 1, 2002, the assessors denied the abatement application.

Pursuant to RSA 76:17, Steeplegate petitioned the superior court for tax abatement. The city filed a motion to dismiss, which the court granted. In its order, the court upheld the assessors' findings that Steeplegate's explanation was not specific, and that it did not avail itself of the opportunity to cure the application's deficiency. Because the assessors did not "neglect or refuse so to abate"—the statutory precursor to judicial review—the court ruled that it lacked jurisdiction to consider the petition. RSA 76:17. This appeal followed.

On appeal, Steeplegate argues that because use of the BTLA abatement form is permissive, failing to complete it to the satisfaction of the assessors should not preclude tax relief or subsequent review by the superior court. The city argues that Steeplegate failed to establish "good cause" in its application. Because no good cause was shown, the city argues that the application was not valid, and thus the assessors properly denied it. The city contends that the superior court properly dismissed the petition for lack of jurisdiction because there was no denial of an application to appeal. We disagree.

Because resolution of this issue requires statutory interpretation, which is a matter of law, we review the trial court's decision *de novo*. *Magoon v. Thoroughgood*, 148 N.H. 139, 142 (2002). In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in

the words of the statute considered as a whole. *In the Matter of Watterworth & Watterworth*, 149 N.H. 442, 445 (2003). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.* "Our goal is to apply statutes in light of the legislature's intent in enacting them and in light of the policy sought to be advanced by the entire statutory scheme." *Fichtner v. Pittsley*, 146 N.H. 512, 514 (2001) (quotation and citation omitted).

RSA 76:16, I (2003) permits any person aggrieved by the assessment of a tax to apply in writing to the selectmen or assessors for abatement of the tax. Selectmen or assessors may abate any tax assessed by them for good cause shown. RSA 76:16, I. The BTLA prescribes the abatement application form. RSA 76:16, III. RSA 76:16, IV (2003) explicitly provides, however, that "[f]ailure to use the [prescribed] form . . . shall *not* affect the right to seek tax relief." (Emphasis added.) The tax abatement scheme is written to make the proceedings free from technical and formal obstructions. *Arlington Mills v. Salem*, 83 N.H. 148, 154 (1927). "It should be construed liberally, in advancement of the rule of remedial justice which it lays down." *Id.* (quotation omitted).

■ ■ To ensure that tax abatement proceedings remain free from technical and formal obstructions, we conclude that the threshold for properly completing an abatement application is minimal. Therefore, a taxpayer who provides a brief explanation of the reason or reasons the taxpayer seeks an abatement remains entitled to seek tax relief. The language of RSA 76:16, IV and our well-established rule that tax abatement proceedings remain free from technical impediments support our conclusion that the selectmen or assessors may not deny an abatement application solely because a taxpayer failed to provide in the application a detailed explanation why the taxpayer is entitled to tax relief.

■ Here, in completing the section of the BTLA form entitled "Reasons for Abatement Application," Steeplegate explained that under an income approach analysis, the current assessment was not supported. Steeplegate's application notified the assessors of its grievance and further informed them that it sought an abatement because the income approach (rather than the cost approach utilized by the assessors) was the more appropriate method to calculate the value of the shopping center. We find

that Steeplegate's application was valid. Therefore, the denial of Steeplegate's abatement application was effectively a denial of its request for an abatement.

■ The city next argues that the superior court lacked jurisdiction because Steeplegate's application was dismissed as insufficient and, thus, there was no denial of an application to appeal. The city contends the court has jurisdiction only if the assessors neglect or refuse to abate the taxes, which did not occur here because the application was invalid. Because we hold that the action of the assessors was a denial of the requested abatement, the superior court has jurisdiction to review the petition. *See* RSA 76:17. Thus, it improperly granted the city's motion to dismiss. Accordingly, we reverse and remand.

*Reversed and remanded.*

DALIANIS and DUGGAN, JJ., concurred.