NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Board of Tax and Land Appeals
No. 2019-0061

APPEAL OF KEITH R. MADER 2000 REVOCABLE TRUST & a.
(New Hampshire Board of Tax and Land Appeals)

Argued: November 19, 2019
Opinion Issued: June 5, 2020

Cooper Cargill Chant, P.A., of North Conway (Randall F. Cooper on the brief and orally), for the petitioners.

Donahue, Tucker & Ciandella, PLLC, of Exeter (Christopher T. Hilson and Brendan A. O'Donnell on the brief, and Mr. Hilson orally), for the respondent.

HANTZ MARCONI, J. The petitioners[1] appeal a decision of the New Hampshire Board of Tax and Land Appeals (BTLA) dismissing their appeals of the denials of applications for abatements of real estate taxes issued by the respondent, Town of Bartlett (Town). The BTLA dismissed the appeals because the petitioners' abatement applications failed to comply with the signature and certification requirement of New Hampshire Administrative Rules, Tax 203.02

_____

[1] There are eighteen petitioners in this matter: Keith R. Mader 2000 Revocable Trust; Bearfoot Creek, LLC; Robert McInnis; Marie McInnis; Slalom Realty Trust; JR Realty Trust; Carol McPhearson; Bryce Blair; Kathi Blair; Eileen A. Figueroa Revocable Trust; Joseph A. Carlucci Living Trust; Mary F. Carlucci Living Trust; Mark J. Gallagher; Paula J. Gallagher; TJF Trust; Christopher Redondi; Amy Redondi; and Engeocom Bartlett, LLC.

(Tax 203.02), and because the BTLA found that the petitioners did not demonstrate that these failures were "due to reasonable cause and not willful neglect." See N.H. Admin. R., Tax 203.02(d). We vacate and remand.

The following facts were found by the BTLA or are otherwise undisputed for the purposes of this appeal. The petitioners own property at a condominium development in Bartlett, and, with one exception, they are located out of state. On February 7, 2018, Attorney Randall F. Cooper received a message left by James Rader, the principal of the condominium developer, requesting legal representation due to a substantial increase in real estate taxes facing property owners. Cooper responded by e-mail that same day, communicating that he was willing to represent the property owners, but that he was leaving in two days for a vacation out of the country and would not return until February 26. Cooper assured Rader that, even though abatement applications were due to the Town by March 1, he would be able to timely submit them.

Before leaving for vacation, Cooper contacted an appraisal firm to confirm the firm's availability to perform an appraisal and sent Rader a representation agreement. According to the petitioners, they did not agree to the terms of the representation agreement until February 20, while Cooper was away on vacation.

Cooper returned from vacation on February 26 and prepared the abatement applications, which were submitted to the Town on or about February 27. The petitioners did not personally sign or certify their respective applications. Rather, Cooper, as their attorney, signed on their behalf. As to each application, Cooper certified that there was a good faith basis for the application and that the facts as stated in the application were true to the best of his knowledge.

The Town denied the abatement applications,[2] and the petitioners appealed to the BTLA on August 27. By letter dated October 10, the BTLA requested "written proof" that the petitioners "signed the abatement applications filed with the Town in compliance with [Tax 203.02]." On October 24, the petitioners filed a motion seeking an exception from Tax 203.02's signature and certification requirement. The petitioners acknowledged that they had not personally signed or certified their respective abatement applications, but contended that the omissions were "due to reasonable cause and not willful neglect." See N.H. Admin. R., Tax 203.02(d). In addition to their motion, the petitioners submitted personally signed affidavits in which

---

[2] Although the Town denied the abatement applications, the lack of the petitioners' signatures and certifications was not the reason for the denials. See RSA 76:16, III(g) (Supp. 2019); Henderson Holdings at Sugar Hill v. Town of Sugar Hill, 164 N.H. 36, 40 (2012).

they certified that they had good faith bases to seek abatements at the time their respective applications were filed.

The BTLA denied the motion and dismissed the appeals. It found that the petitioners failed to comply with Tax 203.02's signature and certification requirement, and further found that the petitioners had failed to demonstrate that these failures were "due to reasonable cause and not willful neglect." As to the latter finding, the BTLA stated that "[t]he record presented indicates [that Cooper] made a conscious decision not to obtain the Taxpayers' signatures and certifications prior to filing," and that his "anticipated vacation plans do not constitute reasonable cause." The petitioners filed a motion for rehearing, which the BTLA denied. This appeal followed.

Our standard for reviewing BTLA decisions is set forth by statute. Appeal of N.H. Elec. Coop., 170 N.H. 66, 72 (2017); see RSA 71-B:12 (2012); RSA 541:13 (2007). We will not set aside or vacate a BTLA decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that such order is unjust or unreasonable. Appeal of Town of Charlestown, 166 N.H. 498, 499-500 (2014); see RSA 541:13. The appealing party has the burden of demonstrating that the BTLA's decision was clearly unreasonable or unlawful. See Town of Charlestown, 166 N.H. at 499; RSA 541:13. The BTLA's findings of fact are deemed prima facie lawful and reasonable. Town of Charlestown, 166 N.H. at 499; see RSA 541:13. However, the interpretation of a statute or a regulation is to be decided ultimately by this court. See Appeal of Cole, 171 N.H. 403, 412 (2018); Appeal of Wilson, 161 N.H. 659, 661 (2011). If we find that the BTLA misapprehended or misapplied the law, its order will be set aside. See Wilson, 161 N.H. at 661.

Resolution of this case requires us to interpret administrative rules. The interpretation of a rule, like the interpretation of a statute, presents a question of law subject to de novo review. See Appeal of Cook, 170 N.H. 746, 749 (2018). We use the same principles of construction when interpreting both statutes and administrative rules. Id. Where possible, we ascribe the plain and ordinary meaning to the words used in administrative rules. See Appeal of Silva, 172 N.H 183, 186-87 (2019). We construe all parts of an administrative rule together to effectuate its overall purpose and to avoid an absurd or unjust result. See id. at 187. Moreover, in construing the BTLA's rules we are mindful that the statutory tax abatement scheme "is written to make the proceedings free from technical and formal obstructions." GGP Steeplegate v. City of Concord, 150 N.H. 683, 686 (2004); see also Arlington Mills v. Salem, 83 N.H. 148, 154 (1927). Like the statutory scheme they are designed to implement, administrative rules governing tax abatement appeals "should be construed liberally, in advancement of the rule of remedial justice which" they implement. GGP Steeplegate, 150 N.H. at 686 (quotation omitted).

3

The submission of an abatement application to a municipality is a prerequisite to the BTLA's review of an abatement request. See N.H. Admin. R., Tax 203.02(a). Tax 203.02 imposes several requirements on municipal abatement applications. As is relevant to this case, the application must include "[t]he taxpayer's signature . . . certifying that the application has a good faith basis and the facts stated are true." N.H. Admin. R., Tax 203.02(b)(4). The rule further provides:

> The taxpayer shall sign the abatement application. An attorney or agent shall not sign the abatement application for the taxpayer. An attorney or agent may, however, sign the abatement application along with the taxpayer to indicate the attorney's or agent's representation. The lack of the taxpayer's signature and certification shall preclude an RSA 76:16-a appeal to the board unless it was due to reasonable cause and not willful neglect.

N.H. Admin. R., Tax 203.02(d) (emphasis added). Thus, although the rule plainly states that an attorney may not substitute his or her signature for the taxpayer's, the lack of a taxpayer's personal signature and certification on a municipal abatement application does not preclude an appeal of the denial of that application to the BTLA if the omission is "due to reasonable cause and not willful neglect." Id.; see also Henderson Holdings at Sugar Hill v. Town of Sugar Hill, 164 N.H. 36, 40 (2012).

There is no dispute in this case that the petitioners did not personally sign or certify their abatement applications. Instead, the petitioners contest the BTLA's ruling that they did not demonstrate that the lack of signatures and certifications was due to reasonable cause and not willful neglect.

We have not previously had occasion to construe the reasonable cause and not willful neglect exception in Tax 203.02. But cf. Appeal of Steele Hill Development, Inc., 121 N.H. 881, 884-85 (1981) (construing agency order imposing additional taxes as an implicit finding that plaintiff had not demonstrated that his failure to timely file tax return was due to reasonable cause rather than willful neglect under a since-repealed taxation statute, see RSA ch. 71-A (repealed 1985)). Although the question of whether reasonable cause or willful neglect exists in a particular case is one of fact for the BTLA, the questions of what elements constitute reasonable cause or willful neglect under Tax 203.02 are ones of law. See United States v. Boyle, 469 U.S. 241, 249 n.8 (1985); Cook, 170 N.H. at 749. Thus, we analyze the reasonable cause and not willful neglect exception in Tax 203.02(d) de novo. See Cook, 170 N.H. at 749.

Neither "reasonable cause" nor "willful neglect" is defined in the BTLA's regulations. See N.H. Admin. R., Tax 102.01-.40 (defining certain terms used in BTLA regulations). But cf. N.H. Admin. R., Tax 102.02 ("'Accident, mistake,

4

or misfortune' means something outside the party's own control <u>and not due to neglect</u>, or something that a reasonably prudent person would not be expected to guard against or provide for." (emphasis added)).  We have noted, however, that "[w]illful is a word of many meanings depending upon the context in which it is used."  <u>Appeal of Morgan</u>, 144 N.H. 44, 52 (1999) (quotation omitted); <u>accord</u> <u>Rood v. Moore</u>, 148 N.H. 378, 379 (2002).  Furthermore, although we have often stated that actions are not willful when taken accidentally or on the basis of a mistake of fact, <u>see, e.g.</u>, <u>Miller v. Slania Enters.</u>, 150 N.H. 655, 662 (2004), our case law does not "indicate an intent to define 'willful' the same in every context," <u>Morgan</u>, 144 N.H. at 52.  Nor does this oft-repeated construction mean that, in order for a given action to be nonwillful, it <u>must</u> have been taken accidentally or on the basis of a mistake of fact.  In certain contexts, for example, we have analyzed whether noncompliance with a statute or regulation was willful based upon whether compliance was reasonably possible under the circumstances.  <u>See</u> <u>id</u>. at 52-53; <u>Ives v. Manchester Subaru, Inc.</u>, 126 N.H. 796, 801-02 (1985).

In <u>Morgan</u>, we upheld a finding of the New Hampshire Board of Pharmacy that the petitioner willfully violated specific recordkeeping and data entry statutes because he was not prevented from complying with those statutes by "circumstances beyond his reasonable control."  <u>Morgan</u>, 144 N.H. at 45, 53.  <u>Morgan</u> is consistent with the construction we gave RSA 275:44 (2010) in <u>Ives</u>.  <u>See</u> <u>Ives</u>, 126 N.H. at 801-02.  RSA 275:44, IV, which was at issue in <u>Ives</u>, provides that "[i]f an employer willfully and without good cause fails to pay an employee wages as required under" other paragraphs of the statute, the employer is liable for liquidated damages.  RSA 275:44, IV; <u>see</u> <u>Ives</u>, 126 N.H. at 801.  In <u>Ives</u>, we stated that an employer willfully and without good cause fails to pay an employee wages under RSA 275:44, IV when the employer withholds wages "voluntarily, with knowledge that the wages are owed <u>and despite financial ability to pay them</u>."  <u>Ives</u>, 126 N.H. at 802 (emphasis added); <u>see also</u> <u>Richmond v. Hutchinson</u>, 149 N.H. 749, 751-52 (2003) (applying construction of RSA 275:44, IV from <u>Ives</u>; rejecting argument that employer did not willfully withhold wages because the record showed the employer did not have a bona fide belief it was unable to pay said wages).  Thus, <u>Ives</u> gave meaning to the "willfully and without good cause" standard in RSA 275:44, IV by focusing on whether the employer withheld wages even though the employer had the funds available to pay them.  <u>See</u> <u>Ives</u>, 126 N.H. at 801-02.

The construction we gave to RSA 275:44, IV in <u>Ives</u>, which uses language similar to Tax 203.02(d)'s "reasonable cause and not willful neglect" standard, tracks with federal laws that can excuse the failure to meet certain tax return filing requirements.  <u>See</u> <u>Steele Hill Development</u>, 121 N.H. at 885 (relying upon "[f]ederal courts that have dealt with . . . language similar to that before us" to conclude that the taxpayer had the burden of proving that his failure to file a tax return was due to reasonable cause and not willful neglect under a

5

since-repealed statute). The Internal Revenue Code "imposes mandatory penalties for the failure to file returns . . . unless the taxpayer can show that such failure was due to 'reasonable cause' and not due to 'willful neglect.'" East Wind Industries, Inc. v. United States, 196 F.3d 499, 504 (3d Cir. 1999); see 26 U.S.C. § 6651(a) (2018). See generally Ann K. Wooster, Annotation, What, Other Than Reliance on Attorney, Accountant, or Other Expert, Constitutes "Reasonable Cause" Excusing Failure to File Tax Return or to Pay Tax, Under § 6651(a) of Internal Revenue Code of 1986 (26 U.S.C.A. § 6651(a)), 168 A.L.R. Fed. 461 (2001). Furthermore, taxpayers who fail to comply with certain information reporting requirements are not subject to penalties "if it is shown that such failure is due to reasonable cause and not to willful neglect." 26 U.S.C. § 6724(a) (2018); see In re Refco Public Commodity Pool, L.P., 554 B.R. 736, 742 (Bankr. D. Del. 2016).

Although neither "reasonable cause" nor "willful neglect" is defined in the Internal Revenue Code, see East Wind Industries, 196 F.3d at 504, the former is defined by Treasury Regulations, see 26 C.F.R. §§ 301.6651-1(c)(1) (2019), 301.6724-1(a)(2) (2019). The Treasury Regulation applicable to the failure to timely file a tax return states that a delay in filing is due to reasonable cause "[i]f the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." 26 C.F.R. § 301.6651-1(c)(1). Similarly, the regulation applicable to the failure to comply with certain statutorily mandated information reporting requirements states that reasonable cause will exist if "[t]he failure arose from events beyond the filer's control," 26 C.F.R. § 301.6724-1(a)(2)(ii), and the filer establishes that he or she "acted in a responsible manner . . . both before and after the failure occurred," 26 C.F.R. § 301.6724-1(a). See In re Refco, 554 B.R. at 742. "[T]he threshold inquiry" under the federal reasonable cause standard "is whether, based on all the facts and circumstances, the taxpayer exercised ordinary business care and prudence." Id.

As for "willful neglect," the United States Supreme Court construed that phrase in Boyle. See Boyle, 469 U.S. at 245. The Court stated that the meaning of "willful neglect" had "become clear over the near-70 years of [the phrase's] presence in the" Internal Revenue Code. Id. As used in the Code, "the term 'willful neglect' may be read as meaning a conscious, intentional failure or reckless indifference." Id. "Stated another way," to show that a failure was not due to willful neglect, "the taxpayer must show that the failure . . . was the result 'neither of carelessness, reckless indifference, nor intentional failure.'" East Wind Industries, 196 F.3d at 504 (quoting Boyle, 469 U.S. at 246 n.4).

We find these federal authorities involving materially identical language to Tax 203.02(d)'s "reasonable cause and not willful neglect" standard highly persuasive. See Steele Hill Development, 121 N.H. at 885. Like the Second Circuit Court of Appeals, "we believe that 'reasonable cause and not willful

neglect' must refer not simply to whether the taxpayer acted voluntarily in the sense of acting consciously, but also to whether the filer's reason for so acting was objectively reasonable under the circumstances." Gerald B. Lefcourt, P.C. v. United States, 125 F.3d 79, 84 (2d Cir. 1997). In addition to the federal authorities discussed above, we draw support from our own case law construing similar standards, see Ives, 121 N.H. at 801-02, our longstanding interpretive rule that the tax abatement scheme "should be construed liberally," with the goal of making abatement proceedings "free from technical and formal obstructions," GGP Steeplegate, 150 N.H. at 686 (quotation omitted); accord Arlington Mills, 83 N.H. at 154, as well as the BTLA's own regulations, which appear to contemplate that a party's action is "not due to neglect" when it is attributable to "something outside the party's own control" or to "something that a reasonably prudent person would not be expected to guard against or provide for," N.H. Admin. R., Tax 102.02.

For all of these reasons, we construe Tax 203.02(d)'s reasonable cause and not willful neglect exception as permitting abatement appeals to the BTLA despite the lack of a taxpayer's signature and certification on the application at issue if the taxpayer can show that, despite exercising ordinary business care and prudence, it was not reasonably possible to submit the application with the taxpayer's signature and certification, and can further show that he or she was not recklessly indifferent to the signature and certification requirement in preparing the application.

In this case, the BTLA concluded that the administrative record was "bereft of supporting facts" that would warrant a finding that the lack of the taxpayers' signatures was due to reasonable cause and not willful neglect because, in part, "[t]he record presented indicate[d] [that Cooper] made a conscious decision not to obtain the Taxpayers' signatures and certifications" in preparing the abatement applications after returning from vacation. Although the BTLA did not explain how it construed Tax 203.02(d)'s reasonable cause and not willful neglect standard, that the BTLA offered Cooper's "conscious decision" to omit the petitioners' signatures as a justification for dismissing their appeals suggests that the BTLA construed the standard to focus, at least in part, on whether the omissions were intentional. Such a focus is perhaps understandable in light of Tax 203.02(d)'s use of the word "willful," but the proper interpretation of "willful" in a given statute or regulation depends upon the context in which it appears. Morgan, 144 N.H. at 52. In light of Tax 203.02's context, as discussed above, we do not construe the rule's reasonable cause and not willful neglect standard to focus on whether the taxpayers intended to submit applications without their signatures and certifications; rather, we construe the standard to permit abatement appeals to the BTLA despite noncompliance with the signature and certification requirement when the taxpayer can show that it was not reasonably possible to comply with that requirement despite exercising ordinary business care and prudence, and that the taxpayer was not recklessly indifferent to the signature

7

and certification requirement.  See, e.g., Gerald B. Lefcourt, P.C., 125 F.3d at 84; see also Ives, 121 N.H. at 801-02; GGP Steeplegate, 150 N.H. at 686; cf. N.H. Admin. R., Tax 102.02.

Because the BTLA did not have the benefit of the construction of Tax 203.02(d) that we announce today, however, and because the primary issue presented by the petitioners' motion was whether the lack of their signatures and certifications "was due to reasonable cause and not willful neglect" under Tax 203.02(d), we vacate the BTLA's decision and remand for further consideration in light of our construction.  See Cook, 170 N.H. at 753.  We trust that the BTLA will give appropriate weight to the circumstances in this case that bear on the objective reasonableness for the omitted signatures and certifications.  Those circumstances include, but are not necessarily limited to, the following: the petitioners sought representation; the representation agreement was not signed until Cooper was away on vacation; Cooper had approximately three days to complete and file the abatement applications after returning from vacation; all but one of the petitioners were located out of state; and the Town did not reject the applications for the lack of signatures.  See In re Hudson Oil Co., Inc., 91 B.R. 932, 950-51 (Bankr. D. Kan. 1988) (finding reasonable cause where time constraints made timely filing impossible).

In addition to arguing that the omissions of their signatures and certifications were due to reasonable cause and not willful neglect, the petitioners appear to suggest that Tax 203.02(d) may be ultra vires insofar as it prohibits attorneys from signing abatement applications for their clients.  See Bach v. N.H. Dep't of Safety, 169 N.H. 87, 94 (2016) (concluding that administrative rules were ultra vires and thus unlawful because they changed the requirements of the statute they were intended to implement).  In light of our decision reinstituting the petitioners' abatement appeals, we need not address, at this time, whether the BTLA may lawfully promulgate a rule permitting the dismissals of property tax abatement appeals on the sole basis that the taxpayer's attorney signed and certified the abatement application at issue.  See Antosz v. Allain, 163 N.H. 298, 302 (2012).  However, we take this opportunity to note that we do not view Wilson as necessarily determinative of that question.  Wilson did not involve an attorney — with a special obligation of candor toward the tribunal, see N.H. R. Prof. Conduct 3.3 — who signed the necessary section of the abatement application certifying that the application has a good faith basis and that the facts stated in it are true.  See Wilson, 161 N.H. at 660 (the nonattorney representative merely wrote on the signature line for the abatement applicants "See agent form," but the accompanying agent authorization form signed by the applicants did not contain a certification that the facts stated in the abatement application were true).  Nor do we view Henderson Holdings, the facts of which did not implicate Tax 203.02(d) because the petitioner appealed the denial of its abatement application to the superior court, not the BTLA, as controlling on that issue.  See Henderson Holdings, 164 N.H. at 37-38, 40.

8

We have reviewed the remaining appellate arguments and conclude that under the circumstances of this case, they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

In summation, we vacate the BTLA's decision dismissing the petitioners' abatement appeals and remand for further consideration as to whether the omissions of the petitioners' personal signatures and certifications on their applications were "due to reasonable cause and not willful neglect" as we have construed that phrase.

Vacated and remanded.

HICKS, BASSETT, and DONOVAN, JJ., concurred.