Board of Tax and Land Appeals
No. 2010-286

APPEAL OF NED WILSON & a.
(New Hampshire Board of Tax and Land Appeals)

Argued: January 20, 2011
Opinion Issued: March 31, 2011

*Mayer Law Offices,* of Nashua (*Fred K. Mayer III* on the brief and orally), for the petitioners.

*Gardner Fulton & Waugh, P.L.L.C.,* of Lebanon (*Adele M. Fulton* and *J. Justin Sluka* on the brief, and *Ms. Fulton* orally), for the respondent.

DALIANIS, C.J. The petitioners, Ned and Theresa Wilson, appeal the decision of the New Hampshire Board of Tax and Land Appeals (BTLA) to dismiss their appeal of the denial by the respondent, Town of Sugar Hill (Town), of their request for an abatement of real estate taxes. We affirm.

The record reveals the following facts. In February 2009, the petitioners, through their non-attorney representative, Mark Lutter, doing business as Northeast Property Tax Consultants, *see* RSA 71-B:7-a (Supp. 2010), applied to the Town for an abatement of real estate taxes, using the form provided by the BTLA for that purpose. *See* RSA 76:16 (Supp. 2010). Section H of the form required the petitioners to sign the application and certify that the information submitted was true; section I required their representative to certify that they had signed it. The petitioners, however, did not sign the form. Instead, Lutter wrote on the signature line "See agent form" and attached the agent authorization form signed by the petitioners. In this form, the petitioners authorized Lutter to act for them and sign municipality abatement and BTLA forms on their behalf. However, the agent authorization form did not include a certification by the petitioners that the information Lutter submitted on their behalf was true.

For reasons that are not reflected in the record submitted on appeal, the Town denied the abatement request, and the petitioners appealed to the BTLA. The BTLA dismissed their appeal because they had failed to sign the abatement application form. *See* RSA 76:16, III; N.H. ADMIN. RULES,

Tax 203.02(b), (d). The BTLA found that because there was no reasonable cause for the petitioners' failure to sign the form and because Lutter's failure to obtain their signatures constituted willful neglect, dismissal of their appeal was warranted. The petitioners' motion for reconsideration was denied. This appeal followed.

Our standard for review of BTLA decisions is statutory. *See* RSA 541:13 (2007). The BTLA's findings of fact are deemed *prima facie* lawful and reasonable. *Appeal of Kat Paws Acres Trust*, 156 N.H. 536, 537 (2007). "This presumption may be overcome only by a showing that there was no evidence from which the BTLA could conclude as it did." *Id.* (quotation and brackets omitted). To prevail, the petitioners must show by a preponderance of the evidence that the BTLA's decision was clearly unreasonable or unlawful. *See id.*; *see also* RSA 541:13. We will not set aside or vacate a BTLA decision "except for errors of law, unless [we are] satisfied, by a clear preponderance of the evidence before [us], that such order is unjust or unreasonable." RSA 541:13. "The interpretation of a statute is to be decided ultimately by this court. Therefore, if we find that the [BTLA] misapprehended or misapplied the law, its order will be set aside." *Appeal of Town of Wolfeboro*, 152 N.H. 455, 458 (2005).

On appeal, the petitioners do not contest that they failed to sign their abatement application and to certify that its contents were true. They argue, however, that the administrative rule requiring their signatures and certification, Rule 203.02(d), is unlawful. Accordingly, they assert that the BTLA's decision, based upon that rule, is unlawful as well.

Rule 203.02, which concerns abatement applications filed with municipalities, provides, in pertinent parts:

> (b) The taxpayer shall file the RSA 76:16 abatement application prescribed by the board or a written document that includes all of the following:
>
> (1) The taxpayer's name, address and daytime telephone number;
>
> (2) The property or properties for which an abatement is sought, identified by street address and tax map and lot number;
>
> (3) A complete and specific statement of the grounds supporting the application along with the comparables relied upon by the taxpayer; and
>
> (4) The taxpayer's signature on the abatement application certifying that the taxpayer has a good faith basis and the facts contained are true.
>
> . . . .

(d) The taxpayer shall sign the abatement application. An attorney or agent shall not sign the abatement application for the taxpayer. An attorney or agent may, however, sign the abatement application along with the taxpayer to indicate the attorney's or agent's representation. The lack of the taxpayer's signature and certification shall preclude an RSA 76:16-a appeal to the board unless it was due to reasonable cause and not willful neglect.

■ The petitioners assert that Rule 203.02(d) is unlawful because it conflicts with certain statutes. *See In re Alexis O.*, 157 N.H. 781, 790 (2008). While the legislature may delegate to administrative agencies the power to promulgate rules necessary for the proper execution of the laws, this authority "is designed only to permit the board to fill in the details to effectuate the purpose of the statute." *Appeal of Mays*, 161 N.H. 470, 473 (2011) (quotation omitted). "Thus, administrative rules may not add to, detract from, or modify the statute which they are intended to implement." *Id.* (quotation omitted). Moreover, agency regulations that contradict the terms of a governing statute exceed the agency's authority. *Petition of Mooney*, 160 N.H. 607, 611 (2010).

Resolving this issue requires that we engage in statutory interpretation. We review the BTLA's statutory interpretation *de novo*. *Appeal of City of Concord*, 161 N.H. 169, 171 (2010). We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Appeal of Kat Paws Acres Trust*, 156 N.H. at 537. We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.* "In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme." *Id.* (quotation omitted).

■ The petitioners argue that Rule 203.02(d) conflicts with RSA 76:16, IV, which provides that an applicant's failure to use the abatement application form set forth in RSA 76:16, III "shall not affect the right to seek tax relief." They maintain that by enacting a rule by which an applicant may lose the right to appeal for failure to sign the very form that need not even be used, the BTLA has exceeded its rule-making authority. We disagree. Viewing the statutory scheme as a whole, we conclude that Rule 203.02(d) is a reasonable rule for carrying out the BTLA's functions, *see* RSA 71-B:8 (2003), and that it does not conflict with RSA 76:16, IV.

The legislature has charged the BTLA with the authority to "make reasonable rules and regulations for carrying out its functions." RSA 71-B:8. Concerning abatements, RSA 76:16, I, allows "[a]ny person aggrieved by the assessment of a tax and who has complied with the requirements of RSA 74" to "apply in writing on the form set out in paragraph III to the selectmen or assessors for an abatement of the tax." Upon receipt of the application, "the selectmen or assessors shall review the application and shall grant or deny [it] . . . in writing by July 1." RSA 76:16, II. "If the selectmen neglect or refuse" to grant the abatement request, "any person aggrieved, having complied with the requirements of RSA 74, upon payment of a $65 filing fee, may apply in writing to the [BTLA]." RSA 76:16-a, I (2003).

The form to which RSA 76:16, I, refers "shall be prescribed by the [BTLA]" and "shall include" certain statutorily delineated information as well as "such other information deemed necessary by the [BTLA]." By statute, the form must include: (1) instructions for filling it out; (2) sections for information about the person applying, the property for which the abatement is sought, and other properties the person owns in the municipality; (3) a section explaining the process for appealing an abatement decision; (4) a section requiring the applicant to state the reasons supporting the abatement request; (5) a section for the applicant to list any comparable properties; (6) a place for the applicant's signature "with a certification by the person applying that the application has a good faith basis and the facts in the application are true"; and (7) a statement explaining how an abatement shall be paid. RSA 76:16, III.

■ Contrary to the petitioners' assertions, we view Rule 203.02(d) as consistent with this statutory scheme. While RSA 76:16, IV provides that the failure to use the form itself "shall not affect the right to seek tax relief," it is silent as to whether the right to seek tax relief from a town or the BTLA may be lost because an applicant has failed to sign an abatement request, or otherwise has failed to provide the information *required* by RSA 76:16, III. In this way, Rule 203.02(d) is not contrary to and does not modify RSA 76:16, IV.

■ ■ Rule 203.02(d) is also consistent with RSA 76:16, III, and constitutes a reasonable rule for carrying out the BTLA's functions. *See* RSA 71-B:8. While under RSA 76:16, IV, the "[f]ailure to use the form" described in RSA 76:16, III "shall not affect the right to seek tax relief," the information required by RSA 76:16, III, including the taxpayer's signature and certification that the information submitted is true, affects the right to seek tax relief. To construe the statutory scheme otherwise would allow a taxpayer to apply for a tax abatement without providing either a town or

the BTLA with the necessary information to process such a request and without certifying that the information provided is true. This would render the statute a virtual nullity, which we will not do. *Appeal of Johnson*, 161 N.H. 419, 423 (2011); *see also Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 511-12 (2006) ("The legislature will not be presumed to pass an act leading to an absurd result and nullifying, to an appreciable extent, the purpose of the statute."); *Appeal of Barry*, 142 N.H. 284, 287 (1997) (we will not interpret a statute so as to render it meaningless).

The petitioners assert that our interpretation is inconsistent with *GGP Steeplegate v. City of Concord*, 150 N.H. 683, 685-86 (2004). In that case, the taxpayer sought an abatement using the form provided by the BTLA pursuant to RSA 76:16, III. *GGP Steeplegate*, 150 N.H. at 684. The City of Concord denied the taxpayer's application because it was insufficiently specific to establish that the taxpayer's assessment was excessive. *Id.* at 685. The taxpayer appealed to the superior court, which upheld the assessors' findings that the taxpayer's explanation was not sufficiently specific. *Id.*

On appeal, the taxpayer argued that because using the BTLA form is permissive, failing to complete it to the satisfaction of the assessors should not preclude tax relief. *Id.* "To ensure that tax abatement proceedings remain free from technical and formal obstructions," we concluded that "the threshold for properly completing an abatement application is minimal." *Id.* at 686. We held that a brief explanation of the reasons for seeking an abatement is sufficient and that a town or city may not deny an abatement application solely because the taxpayer failed to provide a more detailed explanation. *Id.*

■ The petitioners mistakenly contend that their case is on all fours with *GGP Steeplegate*. To the contrary, we held that the taxpayer in *GGP Steeplegate complied* with RSA 76:16, III(e), which requires an "applicant to state with specificity the reasons supporting the abatement request." The issue in *GGP Steeplegate* was whether the taxpayer's brief statement of reasons supporting its abatement request was sufficiently specific to satisfy the statute. By contrast, in the instant case, the petitioners *failed* to comply with RSA 76:16, III(g), which requires an applicant to sign and certify "that the application has a good faith basis and the facts in the application are true." While in *GGP Steeplegate*, we held that demanding that a taxpayer provide *more* information than is statutorily required conflicted with ensuring "that tax abatement proceedings remain free from technical and formal obstructions," mandating that a taxpayer provide *exactly* what is statutorily required is not inconsistent with this goal. *Id.*

■ The petitioners argue that, consistent with the goal of keeping tax abatement proceedings free from technical and formal obstructions and the requirement that the statutory scheme be construed liberally, Lutter's signature on their tax abatement application should have been deemed sufficient to comply with RSA 76:16, III(g). We disagree. RSA 76:16, III(g) requires the *taxpayer* to certify that he or she has a good faith basis for applying for an abatement and that the facts in the application are true. Neither Lutter's signature nor the signed agent authorization form complied with this requirement.

■ While the petitioners assert that requiring the taxpayer's signature and certification is inconsistent with allowing the taxpayer to have a representative in the first place, *see* RSA 71-B:7-a, we fail to see the inconsistency. Had the legislature intended a representative's signature to suffice, it could have so stated. *See, e.g.*, RSA 77-A:6, I (2003) (permitting tax returns to be signed by "taxpayer or by its authorized representative"); RSA 78-C:3 (2003) (tax returns shall be signed by "taxpayer or by his authorized representative"). We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Guildhall Sand & Gravel v. Town of Goshen*, 155 N.H. 762, 764 (2007).

■ Finally, the petitioners argue that the BTLA erred when it found them responsible for Lutter's willful conduct in failing to obtain their signatures. However, they have failed to preserve this issue for our review because they did not list it as an issue in their motion for reconsideration, *see Appeal of Walsh*, 156 N.H. 347, 351-52 (2007); *see also* RSA 541:4 (2007), or as an issue in their notice of appeal, *see LaMontagne Builders v. Bowman Brook Purchase Group*, 150 N.H. 270, 276 (2003); *see also* SUP. CT. R. 16(3)(b).

*Affirmed.*

DUGGAN, HICKS, CONBOY and LYNN, JJ., concurred.