Board of Tax and Land Appeals
No. 2012-252

## APPEAL OF CITY OF NASHUA
### (New Hampshire Board of Tax and Land Appeals)

Submitted: January 16, 2013
Opinion Issued: April 12, 2013

*Law Offices of Sylvia F. Brewster, PLLC*, of Portsmouth (*Sylvia F. Brewster* on the brief), for the taxpayer.

*Office of Corporation Counsel*, of Nashua (*Stephen M. Bennett* on the brief), for the City of Nashua.

*Carynne Christine Fillmore*, of Concord, by brief, for the New Hampshire Local Government Center, as *amicus curiae*.

HICKS, J. The City of Nashua (City) appeals a decision of the New Hampshire Board of Tax and Land Appeals (BTLA) ruling that the taxpayer, Marijane Kennedy (taxpayer), is entitled to an "elderly exemption" under RSA 72:39-a (2012) for the tax year 2011. We reverse.

The following facts were found by the BTLA or are supported in the record. On April 11, 2011, the taxpayer filed an application with the City for an elderly exemption for tax year 2011. The application listed total assets, not including the value of her residence, of $145,724.19. It also noted the existence of an equity loan secured by the taxpayer's residence in the amount of $42,000. To qualify for the elderly exemption under the City's ordinance, the taxpayer's net assets must not exceed $125,000, excluding the value of the taxpayer's residence. The City denied the exemption on the ground that the taxpayer's net assets exceeded $125,000.

The taxpayer appealed to the BTLA. She contended that because the statutory definition of "net assets" deducts the value of "good faith encumbrances," RSA 72:39-a, I(c), the amount of her equity loan should be subtracted from her total assets (excluding the value of her residence) to arrive at "net assets," thereby bringing her "net assets" below the prescribed limit. The BTLA agreed, and the City appealed.

■ ■ "Our standard for review of BTLA decisions is statutory." *Appeal of Wilson*, 161 N.H. 659, 661 (2011); *see* RSA 541:13 (2007). We will not set aside or vacate "the order or decision appealed from . . . except for errors of law, unless [we are] satisfied, by a clear preponderance of the evidence before [us], that such order is unjust or unreasonable." RSA 541:13. "The interpretation of a statute is to be decided ultimately by this court. Therefore, if we find that the BTLA misapprehended or misapplied the law,

its order will be set aside." *Appeal of Wilson*, 161 N.H. at 661 (quotation and brackets omitted). "We review the BTLA's statutory interpretation *de novo.*" *Id.* at 662.

> The starting point in any statutory interpretation case is the language of the statute itself. We first look to the plain and ordinary meaning of the words used. As we examine the language, we do not merely look at isolated words or phrases, but instead we consider the statute as a whole. In so doing, we are better able to discern the legislature's intent, and therefore better able to understand the statutory language in light of the policy sought to be advanced by the entire statutory scheme.

*Pennelli v. Town of Pelham*, 148 N.H. 365, 366 (2002) (quotations and citations omitted). Moreover, our construction of tax statutes is "guided by the well-settled principle that a tax exemption is construed to give full effect to the legislative intent of the statute." *Id.* (ellipsis omitted).

The statute at issue, entitled "Conditions for Elderly Exemption," provides in pertinent part:

> I. No exemption shall be allowed under RSA 72:39-b unless the person applying therefor:
>
> . . .
>
> (c) Owns net assets not in excess of the amount determined by the city or town for purposes of RSA 72:39-b, excluding the value of the person's actual residence and the land upon which it is located up to the greater of 2 acres or the minimum single family residential lot size specified in the local zoning ordinance. . . . "Net assets" means the value of all assets, tangible and intangible, minus the value of any good faith encumbrances. "Residence" means the housing unit, and related structures such as an unattached garage or woodshed, which is the person's principal home, and which the person in good faith regards as home to the exclusion of any other places where the person may temporarily live. "Residence" shall exclude attached dwelling units and unattached structures used or intended for commercial or other nonresidential purposes.

RSA 72:39-a.

Both parties contend that the statute's meaning can be discerned from its plain language and that, in any event, there is "no formal legislative

history" that "clarifies" the calculation of net assets. The City argues that the term "value" in the first sentence of RSA 72:39-a, I(c) "includes both the market value of the residence and any encumbrances on that residence." Therefore, both the market value of the residence and the amount of any encumbrance on it are excluded from the calculation of net assets. The taxpayer counters that the first sentence of RSA 72:39-a, I(c) "contains no reference to any encumbrance; it refers only to the value of the residence." She argues that the legislature could have added language to modify the term "value," but did not. Thus, the taxpayer implicitly invokes the standard of statutory construction that "[w]e interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language the legislature did not see fit to include." *Appeal of Wilson*, 161 N.H. at 662.

The taxpayer also relies upon the legislature's use of the term "all," arguing that under the second quoted sentence of RSA 72:39-a, I(c),

> the "adjusted pool" of assets created by the first sentence[, *i.e.* all assets except for the taxpayer's residence,] is further reduced by *all* good faith encumbrances, without regard to the type of asset or the type of encumbrance. If the legislature had wanted to limit the type of encumbrance which could be deducted from the "adjusted" pool of assets, it would have done so. It did not.

The final term relied upon by the taxpayer is "net," which she contends was properly interpreted by the BTLA: "As observed by the BTLA, the meaning which it assigned to the term 'net assets' is supported by the dictionary definition of the adjective 'net' which signifies something free from all charges and deductions, distinguishable from a 'gross' amount."

■ We are not persuaded that any of the terms emphasized above resolves the question before us. Rather, we agree with the *amicus curiae* that the term "encumbrance" is the linchpin to the analysis. BLACK'S LAW DICTIONARY defines "encumbrance" to mean "[a] claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage." BLACK'S LAW DICTIONARY 607 (9th ed. 2009). We conclude that the plain meaning of RSA 72:39-a, I(c) is that net assets means the value of all *includable* assets net of any encumbrances *on those assets*. We therefore agree with the City that because the taxpayer's residence is not counted as an asset in the net asset calculation pursuant to the first sentence of RSA 72:39-a, I(c), no encumbrance on that residence is deducted in that calculation.

The taxpayer argues that this interpretation "rests upon the false assumption that the legislature was primarily concerned with the availability of taxpayer assets to pay property taxes. Nothing in the statute

supports such an argument . . . [or] suggests that a taxpayer should have to sell or mortgage or liquidate assets in order to pay property obligations." We need not determine, however, whether the posited assumption is true or false. We accept the taxpayer's argument that "[t]he statute is silent on the subject of the availability of taxpayer assets and the uses to which they should be put." Our interpretation of RSA 72:39-a, I(c), however, rests upon the plain meaning of the language the legislature did use. The legislature chose to value taxpayers' assets net of all encumbrances that may lessen their value. *See* BLACK'S LAW DICTIONARY, *supra*. Because, as the taxpayer argues, the "adjusted pool" of assets created by the first sentence of RSA 72:39-a, I(c) consists of all assets *except* for the taxpayer's residence, the encumbrances that lessen the value of that "adjusted pool" of assets do not include encumbrances on the excluded residence.

Finally, the taxpayer argues that "[t]he City's approach to calculating net assets is unfair and unequal as applied" and that the legislature could not have intended such a result. In support of this assertion, the taxpayer quotes a hypothetical posited by the BTLA:

> For example, a taxpayer who has reported assets of $120,000 with no mortgage on her residence is certainly better off financially (in terms of having resources to pay property taxes) than a taxpayer who has reported assets of $145,000 and a $40,000 mortgage encumbrance on her residence. Yet, under the City's approach, the first taxpayer would qualify for the elderly exemption and the second would not, even though the *net* assets of the first taxpayer are higher by $15,000, even if the residences have the same value.

We are not persuaded by the BTLA's hypothetical, given that other hypothetical applications of the statute plainly within its terms produce results that are also arguably "unfair and unequal." For instance, we can assume that as between two taxpayers with equal assets and equal income, and all other things being equal, the taxpayer with no unsecured debt is better able to pay property taxes than the one with minimum monthly credit card payments consuming much of her monthly income, and "is certainly better off financially (in terms of having resources to pay property taxes)." As the City and the *amicus curiae* point out, RSA 72:39-a does not account for unsecured debt at all in determining whether a taxpayer is entitled to the elderly exemption.

For the foregoing reasons, we conclude that the BTLA erred in its interpretation of RSA 72:39-a, and, accordingly, reverse its decision.

*Reversed.*

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.