NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Board of Tax and Land Appeals
No. 2020-0538

APPEAL OF KEITH R. MADER 2000 REVOCABLE TRUST & a.

Argued: June 17, 2021
Opinion Issued: October 8, 2021

Cooper Cargill Chant, P.A., of North Conway (Randall F. Cooper on the brief and orally), for the petitioners.

Donahue, Tucker & Ciandella, PLLC, of Exeter (Brendan Avery O'Donnell and Christopher T. Hilson on the brief, and Brendan Avery O'Donnell orally), for the respondent.

MACDONALD, C.J. The eighteen petitioners (the Taxpayers) appeal an order of the New Hampshire Board of Tax and Land Appeals (BTLA) issued following our decision in Appeal of Keith R. Mader 2000 Revocable Trust, 173 N.H. 362 (2020). In that decision, we vacated the BTLA's prior dismissal of the Taxpayers' property tax abatement appeals and remanded for the BTLA to further consider whether the Taxpayers omitted their personal signatures and certifications on their tax abatement applications to the respondent, the Town of Bartlett (Town), "due to reasonable cause and not willful neglect." Mader 2000 Revocable Trust, 173 N.H. at 372 (quotation omitted). On remand, the BTLA found that "based on the facts presented, the Taxpayers [had] not met their burden of proving the omission of their signatures and certifications was due to reasonable cause and not willful neglect," and again dismissed their appeals. We affirm.

I. Facts

We repeat the facts stated in <u>Mader 2000 Revocable Trust</u> for context. The Taxpayers own property at a condominium development in Bartlett. <u>Id</u>. at 364. On February 7, 2018, the Taxpayers' attorney received a message from the condominium developer, requesting legal representation related to a substantial increase in the Taxpayers' real estate taxes. <u>Id</u>. The attorney explained that he was leaving on an overseas vacation in two days and would not return until February 26, two days before the March 1 abatement filing deadline. <u>Id</u>. He assured the developer that he would nonetheless be able to timely submit abatement applications on behalf of the Taxpayers. <u>Id</u>. The Taxpayers engaged his services and, on February 20, agreed to the terms of the representation agreement. <u>Id</u>. at 365.

The attorney returned from vacation on February 26, prepared the abatement applications, and submitted them to the Town on or about February 27. <u>Id</u>. The Taxpayers did not personally sign or certify their respective applications. <u>Id</u>. Instead, the attorney signed on their behalf. The Town denied the applications, and the Taxpayers appealed to the BTLA.

The BTLA requested written proof that the Taxpayers had signed the abatement applications as required by New Hampshire Administrative Rules, Tax 203.02. <u>Id</u>. Rule 203.02 requires "[t]he taxpayer" to file an abatement application on a form "prescribed by" the BTLA or on a "written document" that includes, among other items "[t]he taxpayer's signature on the abatement application certifying that the application has a good faith basis and the facts stated are true." <u>N.H. Admin. R.</u>, Tax 203.02(b)(4). The rule provides that "[a]n attorney or agent shall not sign the abatement application for the taxpayer," but that an attorney or agent "may . . . sign the abatement application along with the taxpayer to indicate the attorney's or agent's representation." <u>N.H. Admin. R.</u>, Tax 203.02(d). Under Rule 203.02(d), "[t]he lack of the taxpayer's signature and certification shall preclude an RSA 76:16-a appeal to the board unless it was due to reasonable cause and not willful neglect." <u>Id</u>. Rule 102.39 defines the term "[t]axpayer" as "the person or entity that filed [the] tax appeal." <u>N.H. Admin. R.</u>, Tax 102.39.

The Taxpayers filed a motion seeking an exception to Rule 203.02's personal signature and certification requirement. <u>Mader 2000 Revocable Trust</u>, 173 N.H. at 365. They acknowledged that they had not personally signed or certified their respective applications, but argued that the omissions were "'due to reasonable cause and not willful neglect.'" <u>Id</u>. (quoting <u>N.H. Admin. R.</u>, Tax 203.02(d)). The BTLA denied the motion and dismissed the appeals. <u>Mader 2000 Revocable Trust</u>, 173 N.H. at 365. The Taxpayers unsuccessfully moved for rehearing and then appealed to this court. <u>Id</u>.

On appeal, we concluded that Rule 203.02(d)'s "reasonable cause and not willful neglect" standard referred not only "to whether the taxpayer acted voluntarily . . . , but also to whether the filer's reason for so acting was objectively reasonable under the circumstances." Id. at 369 (quotation omitted). We construed the reasonable cause and not willful neglect standard to permit an appeal to the BTLA without a taxpayer signature and certification "if the taxpayer can show that, despite exercising ordinary business care and prudence, it was not reasonably possible to submit the application with the taxpayer's signature and certification," and can also show "that he or she was not recklessly indifferent to the signature and certification requirement in preparing the application." Id. at 370.

Because the BTLA did not have the benefit of our construction of Rule 203.02(d) when it dismissed the Taxpayers' appeals, we vacated its decision and remanded for the BTLA to "further consider[] . . . whether the omissions of the [Taxpayers'] personal signatures and certifications on their applications were 'due to reasonable cause and not willful neglect' as we [had] construed that phrase." Id. at 372 (quoting N.H. Admin. R., Tax 203.02(d)).

On remand, the BTLA found that the Taxpayers failed to prove that they exercised "ordinary business care and prudence." The BTLA observed that the Taxpayers knew of their property assessments no later than December 1, 2017, but "took no discernible steps" to challenge them until February 7, 2018. The BTLA further observed that the Taxpayers chose to hire an attorney who was leaving the country on February 9 and was not expected to return until February 26. The Taxpayers engaged his services, but did not agree to the terms of representation until February 20. The BTLA noted that "[t]he Taxpayers' collective decision to seek representation from [the attorney] (despite his vacation plans and their delay in signing the Representation Agreement) does not excuse his or their noncompliance" with Rule 203.02(d).

The BTLA also found that the attorney signed and certified the abatement applications without consulting "anyone, including the Taxpayers," or the appraisal firm he had previously contacted to appraise their properties. (Emphasis added.) Rather, the attorney "determined entirely on his own that 'good faith grounds' existed for filing abatement applications and he did so simply by comparing the 2017 assessments with those of the prior tax year." The BTLA found that there was "no evidence" that the Taxpayers took or were given "the opportunity to review the abatement applications before they were filed."

As to whether it was "reasonably possible" for the Taxpayers to have submitted their abatement applications with their own signatures and certifications, the BTLA found that they "could have signed and certified each abatement application using various modalities, including faxed or e-mailed signatures." The BTLA observed that "[i]n their individual appeals for the

3

subsequent tax year (2018), the Taxpayers did sign and certify each abatement application." Based upon the record before it, the BTLA found that "it was not 'objectively reasonable' for Taxpayer signatures and certifications to be omitted from their abatement applications."

With regard to whether the Taxpayers established that neither their attorney nor they were recklessly indifferent to the signature and certification requirements, the BTLA was "persuaded by a review of the entire record and the relevant timeline that neither the Taxpayers nor their agent . . . made any attempt to comply with the taxpayer signature and certification requirements at all, in a timely manner." The Taxpayers unsuccessfully moved for rehearing, and this appeal followed.

II. Analysis

Our standard for reviewing BTLA decisions is set forth by statute. See RSA 541:13 (2021); RSA 71-B:12 (2012) (providing that BTLA decisions may be appealed in accordance with RSA chapter 541). The BTLA's findings of fact are deemed prima facie lawful and reasonable. See RSA 541:13. To prevail, the Taxpayers must show, by a preponderance of the evidence, that the BTLA's decision was "clearly unreasonable or unlawful." Id. "We will not set aside or vacate a BTLA decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence before us, that such order is unjust or unreasonable." Appeal of N.H. Elec. Coop., 170 N.H. 66, 72-73 (2017) (quotation omitted). "[O]ur task is not to determine whether we would have found differently than did the board, or to reweigh the evidence, but rather to determine whether the findings are supported by competent evidence in the record." Id. at 74 (quotation omitted).

On appeal, the Taxpayers first argue that the BTLA was compelled to find that they exercised ordinary business care and prudence because most of them live out of state, the tax bills were received right before "the Holiday season," and they did not know that they were required to sign the abatement applications personally. They assert that "it cannot be said that [it] . . . was reasonably possible to file the applications with [their] signatures" because their attorney had only approximately three days to complete and file the applications and all but one of the Taxpayers live out of state. The Taxpayers further contend that their attorney "certainly thought and had good reason . . . to believe that he had no obligation to look into anything further until his return from vacation." They maintain that even if their attorney had such an obligation, "there is no evidence that [he] knowingly and purposely chose to ignore such a duty or [that he] actually knew of and ignored the board's rule."

The Taxpayers' arguments fail to demonstrate that the BTLA's order, "by a clear preponderance of the evidence, . . . is unjust or unreasonable." RSA

4

541:13.  Both the Taxpayers and their attorney are presumed to know the law. See State v. Stratton, 132 N.H. 451, 457 (1989).  "Ignorance of the law is no excuse."  Id.  The Taxpayers do not challenge the BTLA's finding that they could have signed and certified each abatement application by using faxed or emailed signatures.  Nor do they challenge the finding that neither they nor their attorney took any action to comply with the requirement that the Taxpayers personally sign and certify the abatement applications.  Indeed, in his affidavit, the attorney concedes that, in fact, he took no such action.  Under these circumstances, we uphold the BTLA's determination that the Taxpayers failed to prove that the omission of their signatures and certifications was due to reasonable cause and not willful neglect.

The Taxpayers next assert that the BTLA exceeded its authority by adopting Rule 203.02(d), which requires a taxpayer to sign an application to abate property taxes.  See RSA 71-B:8 (2012) (granting the BTLA rule-making authority).  "[A]dministrative rules may not add to, detract from or modify the statute they are intended to implement."  Appeal of Mays, 161 N.H. 470, 473 (2011).  Thus, the determination of whether an administrative rule is ultra vires involves statutory interpretation.  When interpreting statutes, we ascribe the plain and ordinary meanings to the words used.  In re A.D., 172 N.H. 438, 441 (2019).

Rule 203.02(d) is consistent with RSA 76:16.  Both the rule and the statute require the taxpayer, and not the taxpayer's agent, to sign the application and, by so doing, certify that its contents are true.  See RSA 76:16, I(b) (Supp. 2020), III (2012).

RSA 76:16, I(b) authorizes "[a]ny person aggrieved by the assessment of a tax by the selectmen or assessors and who has complied with the requirements of RSA 74" to "apply in writing . . . to the selectmen or assessors for an abatement of the tax."  RSA 76:16, I(b) (emphasis added).  Under RSA 76:16, I(b), therefore, the person who may "apply . . . for an abatement of the tax" is the "person aggrieved."  RSA 76:16, III sets forth the information that the BTLA must include in the "abatement application form" that a "person aggrieved by the assessment of a tax" may file to obtain an abatement.  RSA 76:16, I(b), III.  Among other things, pursuant to RSA 76:16, III(g), the form must include "[a] place for the applicant's signature with a certification by the person applying that the application has a good faith basis and the facts in the application are true."

In a "long line of cases," we have held that a "person aggrieved" for the purposes of RSA 76:16 is the person who has paid the allegedly disproportionate tax — in other words, the taxpayer.  Appeal of Thermo-Fisher Scientific, 160 N.H. 670, 673-74 (2010) (citing cases); see Appeal of Gillin, 132 N.H. 311, 313 (1989) (referring to the person aggrieved as "the taxpayer"); Appeal of City of Concord, 161 N.H. 169, 172 (2010) (same).  Indeed, the third

sentence of RSA 76:16, I(b) uses the word "taxpayer" to refer to the "person aggrieved by the assessment of a tax." Accordingly, when RSA 76:16 is viewed as a whole, the terms "applicant" and "person applying" in RSA 76:16, III(g) are synonymous with the word "taxpayer." See TS & A Motors v. Kia Motors America, 172 N.H. 94, 99 (2019) (explaining that when interpreting statutes, "we will focus on the statute as a whole, not on isolated words or phrases").

In Appeal of Wilson, we rejected a nearly identical challenge to Rule 203.02(d). See Appeal of Wilson, 161 N.H. 659, 662-65 (2011). As in this case, the taxpayers in Appeal of Wilson did not sign their abatement application. Id. at 660. Instead, their non-attorney agent attached a form signed by the taxpayers authorizing him to act on their behalf. Id. The BTLA dismissed the taxpayers' appeal after they had failed to sign the abatement application form, certifying the truth of its contents, because the BTLA found that there was no reasonable cause for their failure to do so and that their agent's failure to obtain their signatures constituted willful neglect. Id. at 660-61. On appeal to this court, the taxpayers claimed that Rule 203.02(d) was unlawful because it conflicted with certain tax abatement statutes. Id. at 662. We held that the rule is consistent with those statutes and "constitutes a reasonable rule for carrying out the BTLA's functions." Id. at 662-65.

We also specifically rejected the taxpayers' argument that their agent's "signature on their tax abatement application should have been deemed sufficient to comply with RSA 76:16, III(g)." Id. at 665. Like the Taxpayers in this case, the taxpayers in Appeal of Wilson argued that allowing the agent's signature on the application to suffice would be "consistent with the goal of keeping tax abatement proceedings free from technical and formal obstructions and the requirement that the statutory scheme be construed liberally." Id. We disagreed, concluding that the agent's signature on the application form did not comply with the statutory requirement that the taxpayer sign the application. Id. We also observed that "[h]ad the legislature intended a representative's signature to suffice, it could have so stated," id., as it did in other statutes specifying that a tax document may be signed either by the "taxpayer or by [the taxpayer's] authorized representative," RSA 77-A:6, I (Supp. 2020); RSA 78-C:3, I (2012); RSA 84-A:4 (Supp. 2020). In Henderson Holdings at Sugar Hill v. Town of Sugar Hill, 164 N.H. 36, 40 (2012), we reiterated these conclusions.

The Taxpayers do not ask us to overrule Appeal of Wilson. Nor are we inclined to do so. Rather, they attempt to distinguish Appeal of Wilson on the ground that their agent is an attorney, while the agent in Appeal of Wilson was not. Their attempts to distinguish an attorney-at-law signing on behalf of a client from an attorney-in-fact signing on behalf of a principal are unavailing.

The Taxpayers fail to establish a persuasive basis for this distinction. The Taxpayers observe that attorneys-at-law stand in the place of their clients;

6

however, attorneys-in-fact also stand in their principals' place when signing documents on their behalf, see Usher v. Daniels, 73 N.H. 206, 207 (1905) ("[T]he act of the agent in signing the agreement in pursuance of his authority is in law the act of the principal—the agent's signature is the principal's signature.").

The Taxpayers also note that attorneys are subject to the New Hampshire Rules of Professional Conduct. However, some attorneys-in-fact representing taxpayers in abatement proceedings will also owe ethical duties to their principals. See RSA 564-E:114 (2019). In addition to other duties, those attorneys-in-fact must "act in good faith" and "with the care, competence, and diligence ordinarily exercised by agents in similar circumstances." RSA 564-E:114(a)(2), (b)(3).

Because the Taxpayers have failed to persuade us that Appeal of Wilson is distinguishable from this case, we adhere to our holding in that case and reject the Taxpayers' assertion that the BTLA exceeded its authority by adopting Rule 203.02(d). We decline to address the Taxpayers' argument that Rule 203.02(d) violates their rights under the New Hampshire Constitution to equal protection because they did not preserve it for our review. The Taxpayers raised this issue for the first time in their motion for rehearing filed with the BTLA, which is insufficient to preserve it for our review. See RSA 541:3 (2021); Appeal of Alexander, 163 N.H. 397, 404-06 (2012); Appeal of Campaign for Ratepayers Rights, 133 N.H. 480, 484 (1990).

Affirmed.


HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

7