NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Personnel Appeals Board
No. 2021-0267


APPEAL OF NEW HAMPSHIRE DIVISION OF STATE POLICE
(New Hampshire Personnel Appeals Board)

Argued: April 14, 2022
Opinion Issued: June 7, 2022

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Jessica A. King, assistant attorney general, on the brief and orally), for the New Hampshire Division of State Police.


Milner & Krupski, PLLC, of Concord (John S. Krupski and Marc G. Beaudoin on the brief, and Marc G. Beaudoin orally), for the respondent.


DONOVAN, J. The New Hampshire Division of State Police (the Division) appeals an order of the Personnel Appeals Board reversing the Division's non-disciplinary removal of an employee pursuant to New Hampshire Administrative Rule, Per 1003.03, and ordering him reinstated subject to certain conditions. The Division argues that the PAB: (1) erred by reversing the employee's removal; and (2) exceeded its statutory authority by ordering the employee's reinstatement subject to certain conditions. We conclude that the Division failed to meet its burden of demonstrating that the PAB's decision to reverse the employee's removal was clearly unreasonable or unlawful. We

further conclude that the PAB exceeded its statutory authority by imposing certain conditions upon the employee's reinstatement. Accordingly, we affirm in part and reverse in part.

## I. Facts

The following facts are supported by the record or are otherwise undisputed. The Division hired the employee as a state trooper in December 2011. In January 2019, following a series of off-duty incidents, the employee became concerned about his mental health and entered inpatient treatment at a hospital for a period of approximately two weeks. The employee applied for leave through the Family Medical Leave Act (FMLA), which the Division granted. In March 2019, as required by the FMLA, the employee provided a fitness-for-duty certification from his primary care provider (PCP) and returned to work.

The following month, the employee suffered a decline in his mental health and again entered inpatient treatment at the same hospital for ten days. His treating psychiatrist determined that he had been misdiagnosed during his previous visit and that his current prescription medications were exacerbating his conditions. The employee received new medications and a revised diagnosis. During his second round of inpatient treatment, the employee took leave under his prior FMLA request. Following his discharge to outpatient treatment, the employee remained on leave throughout the summer of 2019.

In August 2019, a counselor discharged the employee from outpatient treatment. Thereafter, the employee's PCP again completed a fitness-for-duty certification and cleared him to return to work. However, the Division deemed the PCP's fitness-for-duty certification insufficient for the employee to return to work. Instead, the Division initiated the non-disciplinary removal process set forth in New Hampshire Administrative Rule, Per 1003 and requested additional information from the employee's treatment providers pursuant to Per 1003.02(a)-(d).

After securing the employee's authorization, the Division sent identical letters to four of his treatment providers: his PCP; Dr. Liu, who treated him at the inpatient hospital; his outpatient counselor; and his psychiatric nurse. The letters requested "an assessment on [the employee] . . . in regards to his physical or mental ability to perform the essential functions of his position as a State Police Trooper." The letters also contained information about the duties of a state trooper, as well as the employee's signed authorization to release the information.

The PCP responded to the Division's request with a four-sentence letter stating that the employee "is physically and mentally able to perform the

2

essential functions of his position as a New Hampshire state police trooper." The psychiatric nurse, who was responsible for monitoring his medications, responded that, as of their last meeting, the employee was following the recommended dosage of his medication. She also reported the employee's statements that he benefitted from therapy and felt ready to return to work. The outpatient counselor did not respond to the request pursuant to her employer's policy, but previously submitted a discharge summary to the Division detailing the employee's progress during outpatient treatment. During the interim between the Division's initiation of the non-disciplinary removal process and its requests to the employee's treatment providers, the Division received a fitness-for-duty certification from Dr. Liu. The letter cleared the employee to return to work, opining that "there is no psychiatric contraindication to [the employee] returning to full unrestricted duty as of the date of this letter," provided that he continued to participate in his treatment.

The Division determined that the responses from the employee's treatment providers were "unresponsive" to their assessment requests within the meaning of Per 1003.02(e). In a letter to the employee, the Division noted that it had considered the opinions of the four treatment providers and explained that "[n]one of the responses provided any specificity with regards to the nature of any illness, disability or condition" which would affect the employee's ability to perform the essential functions of his job. Thus, the Division mandated that the employee undergo an independent medical examination (IME) to determine his fitness for duty. See N.H. Admin. R., Per 1003.02(e). In December 2019, the examiner reviewed the opinions of the employee's previous treatment providers, conducted his own clinical interview of the employee, and administered a litany of tests. Ultimately, the examiner recommended that the employee "not be considered fit for duty at this time or in the foreseeable future." In May 2020, based upon the opinion of the examiner, the Division removed the employee for non-disciplinary reasons pursuant to Per 1003.03.

The employee appealed his non-disciplinary removal to the PAB. At the evidentiary hearing, the PAB heard testimony from the employee, as well as the Division's human resources director who initiated the IME process, and the state police colonel who issued the notice of removal to the employee. In its order reversing the employee's non-disciplinary removal, the PAB determined that the treatment providers' assessments were responsive to the Division's requests for assessments and that the criteria for ordering an IME were "not satisfied and constituted a rule violation under [Per-A 207.12(d)]."[1] Further, the PAB found that the employee is on "the right path to recovery" and invoked

---

[1] The PAB's order erroneously applied the standard of review for disciplinary appeals under New Hampshire Administrative Rule, Per-A 207.12(b). After the Division's motion for rehearing, the PAB revised its decision and applied the appropriate standard for reviewing an application of personnel rules pursuant to Per-A 207.12(d).

3

"its broad authority" under RSA 21-I:58, I (2020) to tailor a decision that contemplated providing the employee with a support system of "family, work, friends, and therapy." Accordingly, the PAB reinstated the employee subject to seven conditions:

1. [The employee] will remain in active outpatient treatment as recommended by his treatment providers with appointment[s] and meetings scheduled in a manner that will minimize the impact on his work schedule, and will continue to maintain his recovery;

2. [The employee] will submit quarterly progress reports from one of his licensed treatment providers to [Human Resources] and to the [PAB] for one year to demonstrate continued compliance with the treatment plan and both entities will preserve the confidentiality of these medical records; the first report will be due on May 1, 2021;

3. [The employee] will work a regular work week but on shifts approved by his health care provider(s) to accommodate the treatment plan and he will keep [the Division] apprised of his availability based on the recommendations of his treatment providers;

4. [The employee] will also focus on preserving the integrity of the family unit for the sake of the young children — he must accordingly limit his availability for overtime and/or details to the equivalent of one shift per week for one year from the date of this decision; this condition is intended to reduce the level of stress both on the job and at home;

5. The State will reinstate [the employee] to his rank and salary base retroactively to the date of his dismissal with full back pay and benefits;

6. The State will remove from [the employee's] personnel file the letter of dismissal dated May 7, 2020[; and]

7. The board retains the right to modify this decision for good cause at the request of [the employee], the State, or on its own motion as the interests of justice and public safety may require.

The Division filed a motion for rehearing, which the PAB denied. This appeal followed.

4

## II. Analysis

The Division first challenges the PAB's order reversing the employee's non-disciplinary removal. Our review of the PAB's decision is governed by RSA 541:13 (2021). See Appeal of N.H. Div. of State Police, 171 N.H. 262, 266 (2018). The Division, as the appealing party, has the burden to show that the PAB's decision "is clearly unreasonable or unlawful." RSA 541:13. The PAB's findings of fact are deemed prima facie lawful and reasonable. See id. We will not vacate or set aside the PAB's decision except for errors of law, unless we are satisfied, by a clear preponderance of the evidence, that its order is unjust or unreasonable. See Appeal of N.H. Div. of State Police, 171 N.H. at 266. However, we review the PAB's interpretations of statutes and administrative rules de novo. Id. When interpreting both statutes and administrative rules, we ascribe the plain and ordinary meanings to the words used, looking at the rule or statutory scheme as a whole. Id. at 266-67.

Per 1003.01 allows for the removal of a full-time employee for non-disciplinary reasons when "[t]he employee is physically or mentally unable to perform the essential functions of the position to which appointed." N.H. Admin. R., Per 1003.01(a). Pursuant to Per 1003.02(a)-(d), the appointing authority — in this case the Division — shall obtain authorization from the employee to request assessments from the employee's treatment providers to assist in its ultimate determination. See N.H. Admin. R., Per 1003.02(a)-(d). If the appointing authority determines that the treatment providers' assessments are "unresponsive to the assessment request . . . the appointing authority shall arrange to have an independent medical assessment of the employee performed." N.H. Admin. R., Per 1003.02(e).

The Division argues that the PAB erred by ruling that the employee's treatment providers submitted assessments that were responsive and thus that the Division's request for an IME violated the rules. The Division contends that an assessment is unresponsive under Per 1003.02(e) when it fails to satisfy the requirements set forth in Per 1003.02(a). In the Division's view, a response to an assessment request is responsive only when it describes: (1) "[t]he employee's general state of health related to performing the essential functions of the position"; and (2) "[t]he specific nature of any relevant injury, illness, disability or condition which may affect the employee's ability to perform all of the essential functions of the position." N.H. Admin. R., Per 1003.02(a). The Division argues that the assessments were unresponsive under this standard because none of the responses "contained a written assessment regarding [the employee's] general state of health related to performing the essential functions of his position nor the specific nature of his psychiatric diagnoses, as required by the rule." (Emphasis omitted.)

5

We are unpersuaded. Per 1003.02(e) allows an employer to request an IME when it determines that the "employee's licensed health care practitioner is <u>unresponsive to the assessment request</u>." <u>N.H. Admin. R.</u>, Per 1003.02(e) (emphasis added). Based upon the plain and ordinary meaning of this language, we conclude that, to determine whether an assessment is "unresponsive" to a request, we consider whether the response provides the requestor with the information sought in "the assessment request." <u>N.H. Admin. R.</u>, Per 1003.02(e). Indeed, the Division characterizes the issue in the same manner, arguing that "there is no question that the Division took all the proper steps to request assessments from treatment providers" and that "the only remaining question is whether the assessments the Division received from [the employee's] treatment providers were responsive to the assessment request."

Here, nothing in the requests that the Division sent to the employee's treatment providers requested an assessment of the employee satisfying the detailed standard set forth in Per 1003.02(a). Instead, each of the four letters requested the identical information — "an assessment on [the employee] . . . in regards to his physical or mental ability to perform the essential functions of his position as a State Police Trooper." Although the "Authorization for Release of Information" included with the requests referred to the standard set forth in Per 1003.02(a), nothing in the requests directed the treatment providers to refer to or respond to this standard. To accept the Division's interpretation in this instance would lead to the absurd result of requiring medical treatment providers to perform their own legal research, or, in the alternative, obligating treatment providers to disclose information that the Division never requested. <u>See</u> <u>Appeal of Morton</u>, 158 N.H. 76, 82 (2008) ("We cannot interpret the applicable rules and statutes to require such an absurd result."). Ultimately, the Division did not request an assessment that met the requirements of subsection (a) and, by its own actions, rendered that provision inapplicable to our review of the PAB's decision. Accordingly, we need consider only whether the employee's treatment providers furnished the information that the Division actually requested in its letters: an assessment of the employee's "physical or mental ability to perform the essential functions of his position."

We conclude that the record supports the PAB's finding that the employee's treatment providers were responsive to the Division's requests.[2] Taken together, the four assessments that the Division considered in making its "unresponsiveness" determination — from the PCP, the psychiatric nurse, the outpatient counselor, and Dr. Liu — provided the Division with an assessment as to whether the employee could perform the "essential functions"

---

[2] The PAB aggregated the responses of the employee's treatment providers when making its responsiveness determination, and the Division does not argue that the approach adopted by the PAB was contrary to the regulation.

of a state police trooper.  Although the outpatient counselor did not provide a response, the psychiatric nurse reported that the employee continued to follow his medication as of their most recent meeting and both the PCP and Dr. Liu opined that the employee was fit to perform the essential functions of a state police trooper.  Indeed, Dr. Liu specifically represented that he reviewed the supplemental materials of the essential functions of a state police trooper and reviewed those duties with the employee in making his determination that "there is no psychiatric contraindication to [the employee] returning to full unrestricted duty."

The Division counters by arguing that Per 1003.02(e) gives the employer the sole discretion to determine when an assessment is responsive.  In the Division's view, the PAB's determination "has taken the decision out of the Division's hands and prohibited it from requesting an [IME], contrary to the plain language of the rule."  We disagree.  RSA 21-I:58, I, allows "[a]ny permanent employee who is affected by any application of the personnel rules" to appeal to the PAB.  RSA 21-I:58, I.  Therefore, the Division's "unresponsive" determination and request for an IME pursuant to Per 1003.02(e) was subject to review by the PAB.  See RSA 21-I:58, I.  Accordingly, we conclude that the PAB did not err by ruling that the Division violated Per 1003.02(e) when it ordered that the employee undergo an IME.  We therefore affirm the PAB's reversal of the employee's non-disciplinary termination.

The Division also argues that the PAB exceeded its statutory authority pursuant to RSA 21-I:58, I, by imposing certain conditions upon the employee's reinstatement.[3]   Specifically, the Division argues that some of the conditions intruded upon the Division's operations and fall outside the employment relationship, thereby exceeding the PAB's statutory authority to review termination decisions.[4]  We agree.

We note that "[a]n administrative regulation exceeds an agency's authority when it contradicts the terms of the governing statute."  Genworth Life Ins. Co. v. N.H. Dep't of Ins., 174 N.H. 78, 83 (2021).  Although the legislature may delegate to administrative agencies the power to make rules

---

[3] The Division also argues that the PAB's interpretation of the broad powers conferred by RSA 21-I:58, I, as a basis to order the conditions of the employee's reinstatement, constitutes an unconstitutional delegation of power by the legislature to the PAB.  However, the Division made no such constitutional argument before the PAB.  Accordingly, the argument is unpreserved, and we need not address it.  See State v. Batista-Salva, 171 N.H. 818, 822 (2019).

[4] We note that conditions 1 and 2 only require action by the employee, which raises the issue of whether the Division has standing to challenge those conditions.  See ACG Credit Co. v. Gill, 152 N.H. 260, 264 (2005) (holding that a party does not have standing to assert the rights of another party).  However, as the Division points out, conditions 1 and 2 affect the rights of the Division by altering the employment relationship between the parties based upon terms that the Division did not approve.  Accordingly, we conclude that the Division has standing to object to them.

7

necessary for the proper execution of the law, an agency's authority "is designed only to permit the [agency] to fill in the details to effectuate the purpose of the statute." Appeal of Wilson, 161 N.H. 659, 662 (2011) (quotation omitted). "Thus, administrative rules may not add to, detract from, or modify the statute which they are intended to implement." Id.

In its order, the PAB relied upon RSA 21-I:58, I, which provides, in part: "In all cases, the personnel appeals board may reinstate an employee or otherwise change or modify any order of the appointing authority, or make such other order as it may deem just." RSA 21-I:58, I (emphasis added). RSA 21-I:58, I, is part of a statutory and regulatory scheme that provides "a mechanism for review of the appointing authority's exercise of discretion." Appeal of N.H. Div. of State Police, 171 N.H. at 270; see Appeal of Alexander, 163 N.H. 397, 409 (2012) (holding that the expansive language in the last sentence of RSA 21-I:58, I, "was intended to be confined to cases arising under that section — that is, appeals by permanent employees"). Accordingly, we conclude that RSA 21-I:58, I, provides the PAB with statutory authority to review — and when appropriate, order relief from — a decision made by the appointing authority.

Here, the decision for the PAB to review was limited to the Division's non-disciplinary removal of the employee. The specific work hours assigned to the employee by the Division and the employee's continued participation in treatment were not part of that decision. Therefore, the PAB exceeded its statutory authority by imposing conditions upon the employee's reinstatement concerning issues outside of the appealed decision actually made by the Division.

Moreover, the final condition imposed upon the employee's reinstatement reserved to the PAB the authority "to modify [its] decision for good cause at the request of [the employee], the State, or on its own motion as the interests of justice and public safety may require." We conclude that the PAB exceeded its statutory authority by attempting to retain continuing jurisdiction over this matter. Nothing in the statutory or regulatory scheme provides the PAB with the authority to exercise ongoing jurisdiction over its decisions. Cf. RSA 365:28 (2009) (authorizing the Public Utilities Commission to "modify any order made by it"). Indeed, RSA 21-I:46, IX (2020) directs that "[t]he board shall issue final decisions on all appeals within 45 days of the date of hearing." RSA 21-I:46, IX.

Accordingly, we conclude that conditions 1 through 4 and 7 set forth in the PAB's order — concerning the employee's work hours, continued participation in treatment, and granting the PAB ongoing jurisdiction — are ultra vires and, therefore, invalid. See Formula Dev. Corp. v. Town of Chester, 156 N.H. 177, 182 (2007) (noting that, to the extent administrative rules added

8

to, detracted from, or modified our interpretation of a statute, the rules were ultra vires). Because we have already concluded that the PAB did not err by ordering the employee's reinstatement, we conclude that conditions 5 and 6 did not exceed the PAB's statutory authority to review termination decisions pursuant to RSA 21-I:58, I.

### III. Conclusion

For the foregoing reasons, we affirm in part and reverse in part. Any issues that the Division raised in its notice of appeal, but did not brief, are deemed waived. State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed in part and reversed in part.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.